BROWN *vs.* THE STATE.

1. The testimony given by a witness on the trial of another defendant in the same indictment, cannot be read to the witness, on the trial of another defendant, to refresh his memory or for other purpose.

| 28 | 201 |
|---|---|
| 99 | 50 |
| 28 | 199 |
| f107 | 689 |
| 28 | 199 |
| 119 | 489 |
| 28 | 199 |
| 128 | 263 |
| 28 | 199 |
| j130 | 320 |

Brown vs. The State.

2. Witness called by one party and sworn but not examined, cannot be cross-examined by the other party, but that party may call and examine him as his own witness, and ask him leading questions, unless he shows a bias against the party who first called him, or was sworn by mistake.

3. The refusal of the court to allow a witness to depose whether he heard the sheriff called on to arrest the defendants, for that they had killed the deceased, is not error.

4. Presence and participation in the act of killing a human being, is not evidence of consent and concurrence in the perpetration of the act, by a defendant charged as aiding and abetting in the killing, unless he had a felonious design or participated in the felonious design of the person killing.

5. If the person charged with murder in the first degree, commit the assault on the deceased with a deadly weapon, but his intention to assault him with a deadly weapon was unknown to the person charged in the same indictment as principal in the second degree and he intended to participate in an assault and battery only, and in no design to kill, he is guilty of manslaughter only.

6. If a person charged in an indictment as principal in the second degree is connected with the act of killing, but is not connected with the intention to kill, and does not know that the person killing intended to use a deadly weapon in making the assault, he is guilty of manslaughter ; but if the court charged the jury that his being connected with the act of killing made him guilty of murder, a new trial ought to be granted if the jury convicted him of manslaughter only.

7. If a charge of the court be more favorable to a defendant than the evidence would warrant it is no ground for granting a new trial.

8. If there be nothing in the evidence to call for a charge of the court on the law of involuntary manslaughter, it is not error in the court to fail to give it.

9. If the court fail or omit to charge the jury in regard to any particular point, claimed by counsel to be involved in the cause, and the counsel make no request in writing, of the court to charge the jury on said points, they must be held to have been satisfied with the charge as given.

10. Errors complained of must be plainly and distinctly set forth in the bill of exceptions.

11. Principal charged with murder in the second degree may be put on his trial for murder, after a defendant charged as principal in the first degree, has been convicted of voluntary manslaughter.

12. A juror cannot be allowed to impeach his own verdict.

13. New trial will not be granted merely to examine a witness who had given evidence in the cause on a point on which he could give negative evidence only.

14. New trial will not be granted when the weight of evidence supports the verdict.

Murder, in Spalding superior court. Tried before Judge CABANISS, ——— Term, 1858.

The plaintiff in error was indicted for the murder of Harvey Williams, as principal in the second degree.

At the conclusion of the testimony, the court charged the jury as follows :

### Charge of the Court.

The court charged the jury as follows: The defendant, David Brown, stands indicted as principal in the second degree for the murder of William H. Williams; Shildrake Brown is charged in the same indictment, as principal in the first degree; but David Brown is alone on trial before you, and it is upon his guilt or innocence that you are to pass.

In criminal cases you are the judges of the law as well as of the facts; it is, however, the duty of the court to explain the law to you, but you are not concluded by the opinion of the court as to the law ; but it is your province to judge of that as well as the facts, and to be governed by your judgment in one case as in the other. The defendant is charged with the crime of murder—he is presumed to be innocent until the contrary is made to appear; it is incumbent on the State in the first place to prove the killing, to show that the crime has been committed as charged in the indictment, and to show that the defendant is guilty of the offence with which he stands charged, and you are to look to the testimony to determine these facts. If the proof is sufficient to satisfy you

that a homicide has been committed, and that the defendant was concerned and participated in the killing, you will then look to the circumstances which have been proved, and from your opinion as to the facts in proof determine the grade of the homicide—whether it be murder, manslaughter, or justifiable homicide: and to enable you to determine as to the grade of the killing, the court will read to you from the penal code the sections applicable to the case before you. (Here the court read various sections of the penal code.)

You will in the first place enquire if the circumstances in proof are such as to connect the defendant, David Brown, with the homicide of the deceased—if he was present, aiding and abetting the perpetrators of the act, he is in law equally guilty with the one who struck the mortal blow. When two or more persons are engaged in the same illegal purpose, any act done by one of the party in pursuance of that purpose, and with reference to it, is in contemplation of law the act of all; and proof of such act is evidence against any or either of the others who were engaged in the combination. To make out the guilt of the principal in the second degree it must appear that he aided and abetted the perpetrator of the deed, and that he gave his assent to the commission of the crime; and presence with participation in the act committed is evidence from which the jury may infer consent and concurrence.

The jury must look to the circumstances which have been proved, and from these circumstances determine the question whether the defendant aided, abetted or participated in the killing of the deceased. If he did not, he is not guilty of the crime charged, and must be acquitted.

If he aided and abetted and participated in the homicide, your next enquiry will be as to the grade of the offence—whether the facts are sufficient to bring it under the definition of the crime of murder; that is, whether

Brown vs. The State.

the deceased was killed with malice aforethought, either expressed or implied. No case of homicide can be a case of murder if it is not accompanied by malice aforethought, either expressed or implied. Express malice is the deliberate intention to take away the life of a fellow creature manifested by external circumstances capable of proof. If express malice has not been shown, you will look to the facts in proof, and enquire whether they imply malice. Malice shall be implied when no considerable provocation appears, and when all the circumstances of the killing show an abandoned and malignant heart. To rebut the presumption of malice and to reduce the killing from murder to manslaughter, the provocation by words, menaces, threats, or contemptuous gestures, shall in no case be sufficient to free the person killing from the guilt of murder. And if life be taken in consequence of such provocation by words, threats, menaces or contemptuous gestures, it will be taken under circumstances which imply malice. In all cases of homicide in which the provocation is by words, threats, menaces, or contemptuous gestures, the offence is not reduced from murder to manslaughter. But where there is some actual assault, or some considerable provocation other than provocation by words, threats, menaces, or contemptous gestures, the offence may be reduced from murder to manslaughter, if there is not sufficient time for passion to cool between the assault or the considerable provocation, and the killing. If the defendant was connected with the killing of the deceased, if he aided, abetted, and participated therein; and if he received no assault from the deceased or no considerable provocation, the law in such a case implies malice, and he is guilty of the highest grade of homicide, viz: murder. You will look to the evidence, and from all the facts determine this question. But if the facts in proof are not sufficient to make this a case of murder, then you will enquire whether it is manslaughter. Every case of

homicide not accompanied by malice, expressed or implied, is a case of manslaughter or justifiable homicide. Manslaughter differs from murder in the important particular of the absence of malice, as when it happens in a sudden heat of passion—when passion has obtained dominion over reason and the gentler feelings of the heart. From a respect to human infirmities the law in such case mitigates the offence and reduces it from murder to manslaughter. Still this is unlawful, the law not permitting any man to avenge his own wrongs by killing the supposed offender unless in a case of great emergency.

There must be some actual assault on the person killing, or an attempt by the person killed, or some considerable provocation by him other than provation by words, threats, menaces, or contemptuous gestures, and the killing must be the result of that sudden, violent heat of passion, supposed to be irresistable under such assault, such attempt or such considerable provocation, to reduce the offence from murder to manslaughter. But if there be no such assault, no such attempt or no such considerable provocation, the offence is murder; and manslaughter, if there was an actual assault on defendant by deceased, or some attempt by deceased to commit a serious personal injury on the defendant, or if the deceased gave the defendant a considerable provocation and before his passions had time to cool and subside; if the defendant under such circumstances participated in the killing, he is guilty of voluntary manslaughter and not murder, unless the evidence further shows it to be a case of justifiable homicide; and if it is such a case the defendant is entitled to a verdict of an acquittal. But before you give the defendant a verdict of entire acquittal, you must enquire whether the case is a case of justifiable homicide.

The cases of justifiable homicide are : 1st. An execution of public justice as where an officer executes a criminal pursuant to the sentence of the law. 2d. In advance-

Brown vs. The State.

ment of public justice; as when an officer in the due ex-ecution of his office kills a person who assaults or resists him.   3d. In self-defence against one who intends to commit a felony, as muder, robbing, or the like—the intent of the aggressor must be to commit a felony : If it be only to commit a trespass as to beat the party, it will not justify the killing of the aggressor.   The assault or the trespass as above described on the person killing, may reduce the offence from murder to manslaughter, but cannot justify the killing.   To authorize the killing and make it justifiable homicide, it must be an attempt to commit a felony on the habitation, property, or person of the slayer. 4th. Against persons acting in a riotous or tumultuous manner.   In such a case there must be more than one person.

Sections 12, 13, and 15, of the code, relate to the right of self-defence, and they constitute the law which must govern you in your determination upon this branch of the case.   The right of self-defence is given by the 12th section against one who manifestly intends to commit a felony by violence or surprise on the habitation, property, or person of another.

Section 13th limits this right by requiring that the circumstances to justify the killing must be sufficient to excite the fears of a reasonable man, and that the party killing really acted under the influence of these fears, and not in the spirit of revenge.

And the 13th section still further restricts the right by providing that the danger shall be so urgent and pressing at the time of the killing that in order to save his own life, the killing of the other was absolutely necessary. If the deceased intended, or was endeavoring by surprise or violence to commit a felony on the habitation or property or person of the defendant, or the habitation, property, or person of his son; and if the defendant acted under circumstances which were sufficient to excite the

fears of a reasonable man and was influenced by those fears and not by a spirit of revenge; and if at the time of the killing the danger was so urgent and pressing that to save his own life, or the life of his son, the killing of the deceased was necessary, and the deceased was the assailant, then the defendant was justifiable, and you should acquit him. But if there was no such attempt to commit a felony on the habitation, person, or property by the deceased, or the habitation, person, or property of the principal perpetrator, and if there was no reasonable ground to fear such an attempt, and if at the time of the killing the danger was not so pressing and urgent that the killing was absolutely necessary to save his life, or the life of the principal actor, then he was not justifiable in aiding, abetting and participating in taking the life of the deceased. You will take into consideration all the facts as proven by the witnesses in this case, and from those facts determine whether the killing of the deceased was murder, manslaughter, or justifiable homicide. If murder, and you are satisfied beyond a reasonable doubt that the defendant aided, abetted and participated in the killing, find him guilty of murder. If it be a case of manslaughter, and the defendant aided, abetted or participated in it, find him guilty of voluntary manslaughter. If it be a case of justifiable homicide, acquit him. If the circumstances proven are such as to raise a reasonable doubt in your minds as to the guilt of the defendant, acquit him. Though you may have no doubt of the guilt of the principal in the first degree, yet if you have a doubt whether the defendant gave his consent and concurrence to the act of the principal in the first degree, give him the benefit of that doubt and acquit him. But the doubt must be a reasonable doubt, it must not be assumed to be used as a pretext for acquitting the defendant, but must actually exist and must arise from such a state of facts as to leave the mind in doubt on which side the truth lies.

Brown vs. The State.

When such a doubt exists, the humanity of the law gives the accused the benefit of it and acquits him. If the doubt is as to his guilt, acquit him. If it is as to the grade of the offence, that is whether it is murder or manslaughter, in the latter case give him the benefit of the doubt and find him guilty of the less offence. If you should come to the conclusion that the defendant is guilty of the offence with which he stands charged, the form of your verdict will be :

"We the jury find the defendant, David Brown, guilty of murder."

If you think him guilty of manslaughter, you will say : "We the jury find the defendant, David Brown, guilty of manslaughter."

If you think him not guilty, you will say : "We the jury find David Brown not guilty."

The jury found the defendant guilty of voluntary manslaughter, whereupon his counsel moved for a new trial upon the following grounds :

1. Because the court erred in refusing to permit defendant's counsel to read to the witness, Wm. R. Moseley, his testimony as taken down on the trial of Shildrake Brown, but held that they might read the testimony themselves, and ask if he had testified to such and such facts and then introduce witnesses who heard him testify and contradict him if they could by such witnesses ; but that they could not contradict by showing from his testimony, as written down, that he had testified differently from his former testimony.

2. Because the court erred in refusing to permit defendant's counsel to cross-examine Wm. H. Bishop, a witness introduced and sworn by the State for the purpose of identifying the knife of Shildrake Brown, but which testimony was objected to and excluded by the court; and said witness not having been examined any further, the court held that as the State had not examined the wit-

ness the defendant had not the right to cross-examination; yet might introduce him as his own witness if he saw proper to do so.

3. Because the court erred in refusing to permit defendant's counsel to have a reply from Robert Wise, a witness for the State, to the following question, to-wit: Did you immediately after the difficulty hear Holcomb cry out to Wooten, the sheriff, to arrest the Browns for they had killed Harvey Williams?

4. Because the court erred in charging the jury that presence and participation in the act committed is evidence from which the jury may infer assent and concurrence.

5. Because the court erred in charging the jury, that if the defendant now on trial, to-wit, David Brown, was connected with the killing of the deceased—if he abetted and participated therein, and he had received no actual assault from the deceased or no considerable provocation, the law in such case implies malice, and he was guilty of murder.

6. Because the court erred in charging the jury, that if there was an actual assault upon the defendant by the deceased, or some attempt by deceased to commit a serious personal injury on the defendant, or if the deceased gave the defendant a considerable provocation otherwise, and if under a sudden heat of passion arising from such assault or such attempt, or some considerable provocation, and before his passions had time to cool or subside, the defendant under such circumstances participated in killing the deceased, he is guilty of voluntary manslaughter and not murder; unless the evidence further shows it to be a case of justifiable homicide.

7. Because the court erred in failing to read the 16th section of the Penal Code, in connection with other sections relating to justifiable homicide. [The court failed entirely to read such portions of the code as had no connec-

tion with the case made by the evidence, and charged that the sections of the code which the court did read constituted the law which must govern the jury in determining the question. The court read on this branch of his charge only the 12th, 13th and 15th sections of the code.]

8. Because the court erred in charging the jury "if it be a case of manslaughter, and the defendant aided, abetted and participated, find him guilty of voluntary manslaughter:" thereby withholding from the jury the right to find him guilty of involuntary manslaughter in the commission of an unlawful act, or of a lawful act without due caution or circumspection.

9. Because the court erred in instructing the jury, that if they believed the defendant guilty of manslaughter the form of their verdict would be, "we the jury find the defendant, David Brown, guilty of voluntary manslaughter;" and failed to give them any form for a verdict of involuntary manslaughter, giving only the form of a verdict for murder and of voluntary manslaughter, and a general verdict of not guilty; and thereby in effect charging them to find the defendant guilty of murder, or of voluntary manslaughter, or to acquit him entirely.

10. Because the whole charge as delivered to the jury was calculated to mislead them.

11. Because by the indictment Shildrake Brown was charged with the offence of murder as principal in the first degree, and David Brown as aiding and abetting him, and the court failed to charge the jury that it was essential to make out the charge as to said David Brown that the State should prove to the satisfaction of the jury, that David Brown, at the time of the committing of the act by the said Shildrake Brown, knew of his intention and design to commit a murder, manslaughter, or other felony, on the body of the deceased.

12. Because the court erred in failing to charge the jury, that in order to constitute a principal in the second

degree, three things were necessary, to-wit: 1st, That there must be an actual or constructive presence at the committing of the act. 2d, There must be an aiding and abetting in the act committed. 3d, That such aiding and abetting must have been with a felonious design, and with knowledge of the design of the principal actor.

13. Because the court erred in charging that presence and participation in the act was evidence of consent and concurrence.

14. Because the jury found contrary to the evidence.

15. Because the verdict is against the weight of evidence.

16. Because the jury found contrary to law.

17. Because the jury found contrary to and against the charge of the court.

18. Because the principal actor having been convicted of voluntary manslaughter only, David Brown could not be convicted of any crime under the indictment.

19. Because the defendant's counsel argued before the jury, that in order to convict David Brown as principal in the second degree, the State was bound to prove a common purpose of the defendants to commit an unlawful act or felony, and that in the absence of such proof David Brown could not be affected by the act of Shildrake Brown, which the court omitted or failed to charge.

20. That if the fact done by Shildrake Brown was the result of his own intention exclusive of any influence or abetting of David Brown, then David Brown could not be affected by Shildrake's act—which the court failed to charge.

21. That to implicate David Brown in his son's act or guilt, the evidence must show the act to have been done in furtherance of a common purpose—which the court failed to charge.

22. Because one of the jurors, to-wit, Waldrop Warren, while the jury was out on said case and before the jury

Brown vs. The State.

made up their verdict, said to his fellow jurors that it could have been proved by the State that David Brown saw his son and conversed with him when he went out of the grocery, when the difficulty took place, before the fatal blow was given, and before his son came into the grocery.

23. Because since the trial defendant's counsel have discovered that defendant can prove positively, by William M. Cline, that neither defendant nor any other person told Shildrake Brown had gone out at the back door.

The court overruled the motion for a new trial, and defendant by his counsel, excepts and assigns said decision as error.

ALFORD, FLOYD, and MARTIN, for plaintiff in error.

SOL. GEN, DANIEL, DOGAL, PEEPLES & CABANISS, *contra.*

*By the Court.*—McDONALD, J., delivering the opinion.

The defendant was indicted for the offence of murder, as principal in the second degree. The party charged as principal in the first degree has been tried and convicted of voluntary manslaughter. This plaintiff in error, on his trial, was convicted of voluntary manslaughter also. After his conviction, he moved, by his counsel, for a new trial on twenty three grounds, all of which appear in the statement of the case hereto prefixed. The court below, after hearing argument on the motion, refused a new trial, and the plaintiff in error excepts to that judgment.

1. The first ground in the motion for a new trial is predicated on the refusal of the court to allow the counsel of plaintiff in error to read to a witness under examination, evidence given by him, and which was taken down in writing on the trial of the party accused as principal in the first degree. If they wished to read the testimony to the witness to refresh his memory as to what he had tes-

tified before, it was clearly inadmissible. It was not a memorandum made by himself, which, without considering other grave objections to it, was a quite sufficient reason for excluding it, if offered for that purpose. If the object was to discredit the witness, the presiding judge very properly ruled, that they might acquaint themselves with the evidence formerly given by the witness, and interrogate him as to testimony he delivered on the trial of the other defendant, and contradict him, if they could, by witnesses who heard him testify, but not by the testimony reduced to writing on that trial. It does not ap-appear that the counsel examined the witness as suggested by the court. If they had so interrogated him, and had then proven that the evidence proposed to be read was the testimony of the same witness, and that it was truly taken down at the time, we will not say that the court ought not to have admitted it. The record does not so present the point.

2. The next ground in the motion is founded on the refusal of the court to permit a witness to be cross-examined who had been sworn by the prosecution, and to whom but a single question had been propounded, and that not answered, on account of an objection made by prisoner's counsel. The proposition of the counsel for the plaintiff in error was to examine him at that time, not to explain any point in his testimony, because he had delivered none, but to examine him on matters deemed important to the defence. We think the court was right. When a witness is sworn by one party, but is not examined by him, the opposite party has the right to call him as his own witness and to ask him leading questions as in a cross-examination, unless the witness was sworn through mistake, or shows a manifest bias in favor of the party against whom he was first called. Bac. Ab. Evidence E.

3. That the presiding judge refused to allow the witness Robert Wise to testify whether he heard Holcomb, imme-

diately after the difficulty, cry out to Wooten, the sheriff, to arrest the Browns, for they had killed Harvey Williams, is made the third ground in the motion for a new trial. We can see no relevancy, in this question, as it is presented in this record, to the issue before the jury. Answered either way it could not have any possible influence. If the witness did not hear the call, it is no evidence that Holcomb did not call. There was, at the time, great bustle and confusion, and it does not appear that the attention of the witness was directed to that particular matter.

4. Because the court charged the jury that presence and participation in the act committed is evidence from which the jury might infer consent and concurrence, is made the fourth ground in the motion for a new trial. The plaintiff in error contends that this charge is not the law, that the court omitted one essential element in the crime, charged in this indictment. The prisoner was charged with murder as principal in the second degree, and he was on his trial for that offence. The charge of the court must be considered in reference to the accusation. The principal in the second degree could not be convicted of murder without a felonious design. He may have perpetrated the homicide, or participated in it, but without a felonious design he could not be guilty of murder. A person charged in the indictment as principal in the second degree, who is present aiding and abetting, without any felonious design, or without participating in a felonious design, cannot be guilty of murder. He must have known the purpose and intent of the perpetrator of the act, to have participated in his design. The terms "consent and concurrence" here, must mean consent and concurrence in the killing, and if there were consent and concurrence in that by the prisoner, he must have been guilty of murder, for consent and concurrence imply thought, deliberation, and a conclusion of the mind—de-

cision. But if there was no design to commit a felony on the part of the perpetrator of the act, or if there was, and it was unknown to him who was present aiding and abetting, and he had none himselt, there could have been by him no consent or concurrence in the act, and his being present aiding and abetting the act which resulted in a killing, cannot be evidence of consent and concurrence in the homicide. If the jury had convicted the plaintiff in error of murder, there would have been ground of grave complaint of this charge ; but he was convicted of manslaughter only, and he could not have been preju-diced by it, as the jury must necessarily have found that he was not guilty of "consent and concurrence."

5. Shildrake Brown was charged with murder as principal in the first degree, and the plaintiff in error as principal in the second degree ; and if Shildrake Brown assaulted the deceased with a deadly weapon, and his intention to assault him *with such weapon* was unknown to David Brown, and he supposed that his object was to assault and beat deceased only, and he intended to participate in the assault and battery only, and participated in no design to kill, he was guilty of manslaughter only—while the ac-tual felonious perpetrator was guilty of murder. 1 Chit. Cr. Law 258.

6. The fifth ground in the motion for a new trial is alleged error, in the charge of the court, "that if the defendant on his trial was convicted with the killing of the deceased, if he aided, abetted and participated therein, and had not been assaulted by the deceased, and no considerable provo-cation appears, the law in such case implies malice, and he is guilty of murder." This charge of the court is subject to the same objection as that part of the charge last con-sidered. The charge of the court ought in all case to ex-pound the law as applicable to the facts of the case in proof, and should go no further. There is no evidence that the prisoner on his trial had a weapon of any sort;

there is no evidence that he knew the design of his son to kill; or that he was armed with a deadly weapon—the term "connected,"as used in the charge is a broad expression, and is given a broad application. The prisoner may have been connected with the *act* of killing, when he may not have been connected with the *intention* to kill; and if he was not connected with the intention as well as the act, he could not be guilty of murder. But as the accused was not found guilty of murder, the charge did him no wrong.

7. The charge of the court making the sixth ground in the motion for a new trial, is more favorable to the plaintiff in error than the evidence in the case would warrant. There is no evidence in the record that the deceased made any assault upon him, or of an attempt by the deceased to commit a serious personal injury upon him, or that he otherwise gave him considerable provocation. On the contrary, the evidence shows that the deceased acted on the defensive throughout, and that whatever injury he inflicted on the prisoner, was done while he was thus acting. Yet the court in his charge gave the prisoner the benefit of the supposition the deceased had acted aggressively towards him.

There is nothing in the evidence to authorize a charge of the court on the sixteenth section of the fourth division of the Penal Code; and the counsel for the plaintiff in error acquiesced in the omission if there was any. He made no request of the court in regard to that matter.

8. In my judgment, there was nothing in the evidence in this case requiring a charge on involuntary manslaughter. The general definition of involuntary manslaughter is the killing of a human being without any intention to do so, and yet the same section of the code which gives the defition, shows that the killing of a human being without any intention to do so, (contrary to the mere definition,) may amount to the crime of murder. It is said that an assault

and battery is an unlawful act, and if it be committed without any intention to kill, it can be but involuntary manslaughter. An assault and battery with a bludgeon, of such size as if used on a human being would likely produce death, is an unlawful act ; and if it be used positively without any intention to kill, but nevertheless death does ensue, under the *definition*, it would be involuntary manslaughter ; but *under the law* it would be murder, because an assault and battery with such an instrument naturally tends to destroy life. If the unlawful act committed by the accused be to inflict a *voluntary personal* injury on another, or a *voluntary* injury upon the *person* of another, the voluntariness of the act and intent to injure the person must characterize the crime. Every statute must be construed, and this interpretation of the act harmonizes with the legislative construction of it so far as it relates to the offence of murder. We therefore think that a new trial ought not to have been granted on the alleged error in the charge as specified in the 8th ground in the motion.

9. If the counsel for the plaintiff in error desired the charge of the court to the jury on the several matters of which they now complain in the 9th, 11th, 12th, 19th, 20th and 21st grounds in the motion for a new trial, that the court failed or omitted to charge, they ought to have submitted written requests to the court for said instructions to the jury. Not having done so, they must be held to have acquiesced in the failure or omission, if indeed, there were any.

10. There is no specifiation in the 10th ground of the motion, of any matter in which the charge of the court was calculated to mislead the jury, and the exception is too vague, general, and uncertain to be considered. The act requires that the errors complained of shall be plainly and *distinctly* set forth in the bill of exceptions. Acts of '55 and '56, 201.

It is unjust to the opposite party who might be surprised by an elaborate argument on a point in the charge which he might consider unexceptionable. The excepting party ought to understand his own case, and point out the errors of which he complains.

The exception in the thirteenth ground in the motion has already been disposed of in considering the fourth ground.

11. The eighteenth ground makes the point, that after the conviction of the defendant, charged with murder as principal in the first degree, of the offence of voluntary manslaughter only, the defendant on trial, who is charged as principal in the second degree, can not be convicted of any crime under the bill of indictment. This point has, in effect, been decided by this court in the case of Boyd vs. The State, 17 Ga. Rep. 194. The point there was, whether the defendant charged with murder as principal in the second degree, could be tried before the defendant charged as principal in the first degree, and it was held that he could. The authorities then sustain the decision of the court in this case. But Wallis's case is an authority directly in point. He was tried at old Bailey, in 1703. The indictment in that case was against A for murder, and also against Wallis and others as persons present, aiding and abetting A therein. A was first tried upon this indictment and acquitted, and afterwards Wallis was tried upon it. Holt, C. J., determined that though the indictment be against the prisoner for aiding and assisting and abetting A, who was acquitted, yet the indictment and trial of that prisoner (Wallis,) was well enough; for all are principals, and it is not material who actually did the murder.

12. A juror cannot be allowed to impeach his own verdict, and therefore the twenty-second ground in the motion cannot be supported.

13. According to the affidavit of Cline, of whom it has

been said new evidence was discovered, it appears that he will only testify to one fact in the case differently from another witness who had given positive evidence. The evidence of Cline is negative, and it ought not to have counterbalanced the testimony of a positive witness, if he had given it on the stand. But Cline had given evidence and testimony so obviously of some weight to the defence, and which, being present, he must have been able to give according to his recollection of it, ought not to have escaped either the defendant or his counsel.

14. The remaining grounds from the 14th to the 17th inclusive, that the verdict of the jury is contrary to evidence; against the weight of evidence; contrary to law; and contrary to and against the charge of the court, may be disposed of in a few words. What we have already said in disposing of the other grounds in the motion is sufficient on the point that the finding of the jury was contrary to law. The charge of the court, so far as it respects the crime of manslaughter, we have held to be right and the verdict of the jury conforms thereto. As to the verdict being against the evidence and the weight of the evidence, we will refer briefly to some of the leading facts in proof, and which are uncontraverted. On the night of the homicide the deceased and this prisoner had some difficulties in which no deadly weapons had been used, the deceased acting on the defensive and endeavoring to avoid a personal contest. They had fought, but their fight had ended and the deceased was in the back yard. At this time the son of the prisoner came in and asked him what was the matter. He replied that "Harvey Williams had scratched him." He enquired for Williams, and prisoner told him he had gone out at the back door. The two Browns went immediately to the door, when the son instantly inflicted the mortal blow, the prisoner striking the deceased with his fist at the same time. There was no considerable provocation, if any, and the

circumstances of the killing were such as to imply malice on the part of the son who killed the deceased.  He used a deadly weapon, and that is evidence of malice and felonious intent.  It does not appear that the prisoner knew the purpose or intent of the slayer, or that he intended to use a deadly weapon.  But he committed an assault and battery on the deceased, and intended to do him a personal injury, which involves him in the guilt of manslaughter of which the jury convicted him.  We therefore sustain the judgment of the court below.

Judgment affirmed.