## BROOKS *v.* THE STATE.

Mere presence and participation in the act of killing a human being is not conclusive evidence of consent and concurrence in the perpetration of the act by a defendant sought to be held responsible for the homicide as aiding and abetting the actual perpetrator, unless such defendant participated in the felonious design of the person killing. The court committed error in declining to charge the jury in accordance with a written request embodying this principle.

Argued April 15,—Decided May 14, 1907.

Indictment for murder. Before Judge Kimsey. Hall superior court. March 14, 1907.

*Thompson & Bell, B. P. Gaillard Jr.,* and *C. R. Faulkner,* for plaintiff in error.

*John C. Hart, attorney-general,* and *W. A. Charters, solicitor-general,* contra.

EVANS, J. Foster Brooks and his mother Sue Brooks were jointly indicted for the murder of Jack Collins. The defendants severed, and Sue Brooks was convicted of murder as a principal in the second degree, and to the overruling of her motion for a new trial she brings error to this court. There was no controversy at the trial that the deceased came to his death from a blow inflicted by Foster Brooks. There was evidence from which the jury might infer that the homicide occurred under substantially these circumstances: Plaintiff in error, a white woman, lived near the home of John Silvey. On the day of the homicide the deceased, John Silvey, and others had spent the day in a debauch within close prox-

imity to the home of the plaintiff in error. She had previously complained of the conduct of the men who had assembled at the home of Silvey on other occasions. Mrs. Silvey, the wife of John Silvey, whose husband had taken part in the debauch and become intoxicated, went to the home of the plaintiff in error and asked her son to go down and assist her in separating her husband and brother, who were engaged in a quarrel. The plaintiff in error refused to allow her son to go, but went down herself and attempted to quiet the noise by directing that John Silvey should retire to bed, that the doors should be locked, and that the other men should not be permitted to enter the house. The front door was locked, and plaintiff in error left through the rear door in the direction of her home, and when she reached the front of the house she observed the deceased and a companion knocking at the door for admittance. She requested them to leave, whereupon the deceased began to curse the plaintiff in error, when she threw a chip or rock at him. The deceased continued cursing the plaintiff in error, when she called aloud for her pistol, but receiving no response she went to her house, procured her pistol, came back and again ordered him to leave. The deceased continued to use vile language, and the plaintiff in error discharged her pistol in the air for the purpose of frightening him. About that time the son, Foster Brooks, ran from the house, and, without uttering a word, struck the deceased a mortal blow with a stick. There was other evidence, though weak and unsatisfactory, from which the jury may have inferred the defendant's guilt on the theory of conspiracy with her son to kill. There was also evidence of considerable provocation to Foster Brooks to cause him to inflict the blow. We have only collated in the foregoing narrative such facts from the brief of evidence as might illustrate the error complained of in the fourth and fifth grounds of the amended motion.

The judge at the very threshold of his charge, used this language: The defendant "is charged in the bill of indictment . . . with the offense of murder, as principal in the first degree, but the contention before you and before the court is not that she is principal in the first degree, the actual perpetrator of the offense, but the contention is that she was principal in the second degree, and therefore guilty of murder as principal in the second degree." The entire charge of the court was framed on the assumption that if the

defendant was guilty of murder, she was only guilty as a principal in the second degree. It was one of the contentions of the defendant, which was supported by the narrative from the evidence which we have just given, that there was no intent on her part to take the life of the deceased; that she was not aware that her son intended to take his life, and that, though present at the time of the commission of the homicide by her son, she was not mentally consenting thereto and approving the same, nor in any wise participating in the act and conduct of her son. In presenting this theory to the jury, the able judge charged the jury that presence alone was insufficient to establish the defendant's guilt as a principal in the second degree; but the evidence must go further and show that she aided and abetted her son to do the act. In this connection the plaintiff in error, through her counsel, presented to the court two timely written requests, which were as follows: (1) "In criminal law the word 'abet' means to encourage, or set another on to commit a crime. This word is always applied to aiding the commission of a crime. To abet another to commit a crime is to command, procure, or counsel him to do it; and presence and participation are necessary to constitute one an abettor." (2) "Even if one was present at the commission of a crime and mentally approved or consented to the same, yet if that consent was unknown to the person committing the crime, the one so mentally approving could not be held guilty as principal."

Mere presence and participation in the act of killing a human being is not conclusive evidence of consent and concurrence in the perpetration of the act, by a defendant charged as aiding and abetting in the killing, unless he participated in the felonious design of the person killing. *Brown* v. *State, 28 Ga.* 200 (4). It is true that the defendant was not indicted as a principal in the second degree, and, if the proof authorized it, may have been convicted as a principal in the second degree, though indicted as a principal in the first degree. *Morgan* v. *State, 120 Ga.* 294. But the court submitted to the jury that the sole theory under which the defendant was claimed to be responsible for the murder of the deceased was as a principal in the second degree. She was thus entitled to have the law applicable to the theory presented fully charged; and particularly so when asked by a proper written request. The charge as given did not present the idea that presence

and participation in the act of killing a human being was not sufficient evidence of consent and concurrence in the perpetration of the act by one who is sought to be held responsible as an aider and abetter in the killing, unless such person participated in the felonious design of the person killing. This was a close case, and we think that the failure of the court to charge in accordance with the written requests, adjusting the law to the defendant's contention in this respect, was ground for a new trial. See, in this connection, *Roberts* v. *State,* 114 *Ga.* 450.

We have examined the other assignments of error in the motion for a new trial, and do not think that any error was committed by the court as therein alleged.

　　　　　　　*Judgment reversed. All the Justices concur.*