# CASES

## DECIDED IN THE

# SUPREME COURT OF GEORGIA

### AT THE

## OCTOBER TERM, 1925

---

### TANNER v. THE STATE.

1. The declarations or conduct of one joint conspirator, made after the enterprise is ended, are inadmissible except against the person making them, and as against others must be rejected as narrative merely of past occurrences.

2. The court erred in admitting evidence of the declarations of a defendant jointly indicted with the accused on trial, which were made subsequently to the completion of the criminal enterprise; and the error was not cured by ruling out the evidence after it had been before the jury for a considerable time, when in ruling it out the court failed to instruct the jury distinctly that they should disregard the evidence in reaching a verdict in the case.

3. The testimony as to an inquiry made by a defendant jointly indicted with the one on trial, as to certain insurance policies upon the life of the decedent, should have been excluded upon motion duly made.

4. The court erred in admitting the testimony of a witness for the State, that he heard a person who was jointly indicted with the accused on trial say that he had a large amount of insurance on the life of the decedent, and that it was payable to a certain bank; this declaration having been made after the homicide for which the movant was indicted. The evidence was not admissible generally, and was not admissible to prove a conspiracy between the defendants jointly indicted, as against the one actually on trial.

5. Though generally a party can not impeach his own witness, he may contradict him by proving the facts to be otherwise than as the witness has stated them in evidence. *Skipper* v. *State*, 59 *Ga.* 64; *Hollingsworth* v. *State*, 79 *Ga.* 605 (4 S. E. 560).

6. The evidence of a witness, that upon a certain trip to a county other than the one in which the decedent was killed he went with a party to the lands of a person named, where they picked up certain samples of

13

ores, and that all came back together, and that the decedent and the person. jointly indicted with the plaintiff in error and other named persons took certain of the ores referred to, was irrelevant and immaterial, but harmless.

7. The court did not err in admitting, over objection, evidence that sometime prior to the homicide with which the movant is charged, the defendant jointly indicted with him was gathering up samples of a certain ore similar in character to deposits which this joint defendant claimed to be on certain lands of his where the homicide, took place. ·

8. Certain letters were introduced in evidence which purport to have been written by the defendant jointly indicted with the plaintiff in error. They were objected to upon the ground that they were irrelevant, and that the. execution of the letters had not been proved. While there was no direct proof of the execution of the letters, circumstances were proved from which the jury could find that the 'person whose letters these purport to be had written them; for one of the witnesses testified that he exhibited certain reports from the State Geologist, to whom the letters were addressed, which seemed to have come to him in response to the letters.

9. The court did not err in admitting in evidence a target perforated with shot discharged from the same gun by the discharge from which the decedent had been killed, although the target had been experimented with in the absence of the defendant on trial and without his having notice of it; a witness for the State testifying, in reference to the target, that it was at certain stated distances from the muzzle of the gun when the shots were fired at it. It was competent to introduce this evidence to show how much or how little the shot from this gun would, at certain stated distances, "scatter," as evidence upon this subject would illustrate the question as to how close the muzzle of the gun was to the head of the decedent at the time he was killed; the defendant having stated that he was a certain distance, and the State insisting that he was much closer to the man who was slain.

10. The court did not err in admitting the evidence given by a witness for the State, that two or three months before the date of the homicide the defendant said to him, in the course of a conversation, "that Rawlings [the other joint defendant] had been after him to do something for him that meant big money for Rawlings, and he would have to do it or leave. I told him I would not do anything that would incriminate myself." This evidence was material, and tended to illustrate the question as to whether a conspiracy to commit the crime charged existed.

11. The court did not err in charging the jury as follows: "A conspiracy consists in a corrupt agreement between two or more persons to do an unlawful act, unlawful either as a means or as an, end. This agreement may be established by direct proof, or by inference, as a deduction from conduct, which discloses a common design on the part of the persons charged to act together for the accomplishment of the unlawful purpose. This question, that is, whether or not a conspiracy has been established, is solely for the jury to determine." This stated a ,correct principle of law, and was authorized by the evidence. This also covers the exception to the charge made in the 23rd ground of the motion for

new trial, in which it is contended that there was no evidence to author-ize a charge upon the subject of conspiracy.

12. The evidence of a named witness for the State, tending to show that the codefendant of the plaintiff in error had an interest in certain in-surance policies upon the life of the decedent, was not, in view of all the issues involved in this case, irrelevant.

13. The court did not err in refusing to charge the jury as follows: "The mere presence and participation in the general transaction in which a homicide is committed is not conclusive evidence of consent and con-currence in the perpetration of a crime by a defendant sought to be held responsible for the homicide, as aiding and abetting the actual per-petrator, unless such defendant participated in the felonious design of the person killing." While the requested charge states a proposition that is true in law and in fact, it was too vague and general, in view of the other evidence in the case, to require the court to give it.

14. In view of what is ruled above, it is unnecessary to consider the ground asking for a new trial upon the ground of newly discovered evidence.

No. 4964.　OCTOBER 14, 1925.

Murder. Before Judge Camp. Johnson superior court. May 28, 1925.

*Evans & Evans* and *C. S. Claxton,* for plaintiff in error.

*George M. Napier, attorney-general, Fred Kea, solicitor-general, T. R. Gress, assistant attorney-general, J. L. Kent, W. C. Brinson, E. L. Stephens,* and *J. J. Harris,* contra.

BECK, P. J. At the March term, 1925, the grand jury of John-son County returned an indictment against J. J. Tanner and C. G. Rawlings, charging them with the offense of murder, for that they did, on the 17th day of February, 1925, kill and murder G. A. Tarbutton by shooting him. The defendant Tanner was put upon trial at the March term, 1925, of the superior court of Johnson County, and the jury trying the case returned a verdict of guilty with a recommendation of mercy. The defendant made a motion for a new trial, which was overruled, and he excepted.

Tarbutton was killed by a load of shot discharged from a gun which was carried by the defendant in this case. The shot pene-trated the back of Tarbutton's head and came out in front, killing him instantly. The defendant claimed that he tripped and fell; that the gun was accidently discharged, and that the killing of Tar-button was accidental. The State contended that Tanner inten-tionally fired at the decedent from the rear; that the killing was murder; that there was a conspiracy between the two defendants to commit the murder. The plaintiff in error contends that no

conspiracy had been formed between the two, that none existed, and that none was proved.

1. During the trial of the case the court admitted, over the objection of the defendant duly made, certain declarations of Rawlings, who was jointly indicted with Tanner, but who was not on trial. The objection to the evidence to establish these declarations was upon the ground that the alleged criminal enterprise had ended before these declarations were made, and that several of the declarations as to which testimony was introduced were made several days after the homicide, and none of them made in the presence of the defendant Tanner. In numerous grounds of the motion for a new trial error is assigned upon the admission of this testimony; and as many of these grounds raise substantially the same question, they need not be taken up separately, but may be disposed of together. Certain of the declarations upon the part of Rawlings which were objected to on the ground that they were made after the criminal enterprise was terminated were so completely immaterial as to be harmless; but others were not immaterial, and related to issues of fact which the jury were to pass upon; and such of these declarations as were material and made after the completion of the criminal enterprise were inadmissible as against the accused on trial, and should have been excluded upon objection duly made. *Wall* v. *State,* 153 *Ga.* 309 (112 S. E. 142).

2. After the evidence referred to above, that is, declarations made by Rawlings after the completion of the criminal enterprise, had been admitted, and after the lapse of considerable time, and after the State had closed its testimony, counsel for the accused moved the court to rule out the testimony, upon the ground, among others, that the declarations of an alleged accomplice, after the alleged criminal enterprise had ended, were inadmissible; and thereupon the court "said in the presence of the jury that 'all declarations made by C. G. Rawlings since the alleged homicide are ruled out.' " But the court did not expressly tell the jury that they should disregard this testimony, and the movant contends that the admission of the testimony was error, and that the ruling out of the testimony without expressly telling the jury to disregard it did not cure such error; and this court is of the opinion that the failure of the trial court, in connection with the ruling excluding the declarations referred to, or thereafter, to instruct the

jury that they should disregard the same in arriving at their verdict in the case was such error as to require the grant of a new trial. Such is the ruling in the case of *Campbell* v. *State,* 155 *Ga.* 127 (116 S. E. 807). The writer of this opinion desires to state for himself and for Mr. Justice Hines that we hold to the views expressed in the first division of the opinion in the case just cited; but we are of the opinion that the ruling of the court, made by saying in the presence of the jury that "all declarations made by C. G. Rawlings since the alleged homicide are ruled out," did not cure the error committed in admitting the evidence of the declarations of Rawlings after the homicide. For these declarations were numerous and detailed by several witnesses, and the attention of the jury should have been called to the specific declarations which were ruled out.

3. Exception is taken to the admission of the following evidence of a witness for the State: "Mr. Rawlings made an inquiry of me after I had gone to town and got back home. He asked me where was Gus's insurance policies. I told him that I supposed Fluker had them." This evidence related to what was said by Rawlings after the homicide. We think it should have been excluded upon objection, and should have been ruled out upon motion made, on the ground that it was a statement made after the completion of the alleged joint criminal enterprise. It is true that subsequently, as we have said above, the court made a ruling excluding all declarations of Rawlings made after the homicide, but the jury might not have understood that this inquiry made by Rawlings came under the ruling, as they might have thought that an inquiry made by him could not be classed as a "declaration" made by him; but the word "declaration," given its broadest meaning, would include, of course, such an inquiry, yet the jury might not have so understood it and probably did not. But if Rawlings was inquiring after certain insurance policies covering the life of Tarbutton, this was a fact which the jury might, in view of other evidence in the case, have given weight to as against the defendant on trial.

4-12. The rulings made in headnotes 4 to 12, inclusive, require no elaboration.

13. Counsel for the accused duly requested the court, in writing, to give the following charge: "The mere presence and participation in the general transaction in which a homicide is com-

mitted is not conclusive evidence of consent and concurrence in the perpetration of a crime by a defendant sought to be held responsible for the homicide, as aiding and abetting the actual perpetrator, unless such defendant participated in the felonious design of the person killing." The court did not err in refusing to give this charge. Before the court will be reversed for a refusal to give a written request to charge, it must appear that the charge desired was accurate and correct. That it is substantially correct is not enough; it must contain a perfect statement of the law applicable to the question dealt with, to render it erroneous for the court to refuse to give it in charge to the jury; and this request to charge does not measure up to that. It is undoubtedly true that "mere presence and participation in the general transaction in which a homicide is committed is not conclusive evidence of consent and concurrence in the perpetration of a crime." In truth, it may be that general participation in a transaction in the course of which a homicide is committed may not only fall short of being conclusive evidence against one who participated, but it may be no evidence at all. But the mere fact that a written request contains a true statement is not sufficient in itself to require the judge to give it in charge to the jury. The expression, "mere presence and participation in the general transaction in which a homicide is committed," is vague, indefinite, and ambiguous. The word "transaction" is applicable generally to business affairs and to doings, proceedings, and negotiations affecting property rights, contracts, agreements, and the negotiations resulting in contracts and agreements, and in the transfer of titles, or the obligation of one or both of the parties to do certain specified things, etc., etc.; and it is not usually applied to criminal enterprises and the acts and doings of the parties implicated in the criminal enterprise. In this case there is much evidence as to "transactions" in the sense in which it is generally used. There is also evidence relating to a criminal enterprise,—evidence from which the jury would have been authorized to find that there was a conspiracy to bring about results highly criminal; and the word "transaction," therefore, as used in this charge, was too general and indefinite. It is true, however, that evidence of the mere presence of a party at the scene of the commission of a crime at the moment of its perpetration would not of itself authorize a jury to find the person who was

thus present guilty of consent and concurrence in the perpetration of the crime, without other evidence of his aiding and abetting the actual perpetrator of the crime, or other evidence of his having participated in the felonious design of the actual perpetrator. The request to charge which the court refused was suggested, very probably, by the ruling of this court in the case of *Brooks* v. *State,* 128 *Ga.* 261 (57 S. E. 483, 12 L. R. A. (N. S.) 889). It was there held: "Mere presence and participation in the act of killing a human being is not conclusive evidence of consent and concurrence in the perpetration of the act by a defendant sought to be held responsible for the homicide as aiding and abetting the actual perpetrator, unless such defendant participated in the felonious design of the person killing. The court committed error in declining to charge the jury in accordance with a written request embodying this principle." It will be seen, upon comparison of the request to charge with the language of the opinion in the *Brooks* case, that the request to charge here under consideration is almost a literal transcript of the language employed by this court in that case; but in the *Brooks* case it was held that mere presence and participation *in the act of killing* is not conclusive evidence of consent and concurrence. In the *Brooks* case the ruling of *Brown* v. *State,* 28 *Ga.* 199, was followed. In each of these cases instructions upon a specific question as to which the jury might easily go wrong were dealt with.

14. It follows from what we have said that the judgment of the court below must be reversed upon certain grounds with which we have already dealt, because of the errors there pointed out; and that being true, there is no occasion for considering the ground based upon the alleged newly discovered evidence. This question can not arise upon the next trial.

*Judgment reversed. All the Justices concur.*