20148. WILBANKS *v.* THE STATE.

DECIDED MARCH 5, 1930.

O. L. *Harris, Powell & Dykes,* for plaintiff in error.

T. *Hoyt Davis, solicitor-general,* contra.

BLOODWORTH, J. (After stating the foregoing facts.) 1. The 1st special ground of the motion for a new trial alleges that the court erred in excluding from the evidence a certain statement of

the deceased, made to her mother, Mrs. C. T. Goodwyne, a witness for the State, after the deceased had returned from a visit to Atlanta, as follows: "She (Virginia Clark) said that she went to the theatre or something, and it seemed like there was something broke, and she said she thought she wouldn't be able to get back to the hotel, but she did." The exclusion of this evidence is alleged to be error because it was "material to the issues involved in the case, and was a direct contradictory statement of the deceased (Virginia Clark) to a dying declaration offered by the State" in the trial of said case and made later to Dr. McArthur, as follows: "That when she found out that she was pregnant she told the man that was responsible for it that something would have to be done about it, and she said that he told her that he knew a doctor that would knock it up for her, and that he went for the doctor and brought him in, and he proceeded to produce an abortion. She said that he used medicine and finally attempted to use instruments, and she said that it was so painful that she told him he would have to quit, that he then gave her chloroform and completed the act; that was what had butchered her up and was killing her." The State insisted that the statement made by Mrs. Clark to her mother and which was excluded was not a statement of the deceased directly contradictory to the dying declaration sworn to by Dr. McArthur, nor was it "explanatory, limiting, qualifying, or impeaching" the alleged declaration of the deceased as claimed, by the plaintiff in error, and the exclusion of this statement made by Mrs. Clark was not error. We agree with this insistence of the State. See 28 R. C. L. 634, 635, sec. 220.

2. The 2d ground of the motion for a new trial alleges that the court erred in refusing to allow a witness for the State, Mrs. C. T. Goodwyne, to answer the following question: "Now, where did your daughter say that she was when you testified here yesterday on direct examination that she said that she felt something tear loose in her in Atlanta, and that she thought she wouldn't be able to get home? Where she said she was?" This question answers itself. She said that "she felt something tear loose in her in Atlanta." This ground of the motion shows nothing that requires a new trial. There is nothing in the insistence of counsel for plaintiff in error that the evidence offered was "a direct contradiction of the dying declaration offered by the State."

3. Upon the showing made by the solicitor-general that he had been entrapped, the court did not err in allowing him to ask the witness Will Holt, who was introduced by the State, in reference to the conversation which Holt had sworn occurred between Miss Julia Goodwyne and the accused. See, in this connection, *Tanner* v. *State,* 161 *Ga.* 193 (5) (130 S. E. 64), and cases cited: *Alexander* v. *State,* 1 *Ga. App.* 289 (1) (57 S. E. 996) ; *Sessions* v. *State,* 6 *Ga. App.* 336 (2) (64 S. E. 1101).

4. The 4th ground of the motion for a new trial is based upon errors which it is alleged the court committed when the jury, after having considered the case for some time, were brought into court and the following occurred: The court asked if the jury wished any further instructions. The foreman said: "Yes, sir, we want some further instructions on the law of abortion." The court: "What constitutes abortion?" The foreman: "Yes, sir." The court: "Just on that?" The foreman: "That is all, wasn't it Mr. Ford?" Juror Ford: "No, what we want is the law as to where a fellow did not start an abortion, is he guilty of abortion if he finished it, or anything like that." The court: "I don't quite understand." Juror Ford: "The point we want to get clear on is, we want to know is the fellow that didn't start the aborting, and he finished the aborting, was he guilty? That is the point we want." The court thereupon again charged the jury fully on abortion. At the completion of the supplemental charge the court asked: "Is there anything else, gentlemen of the jury? Is there any other question, or have I made myself clear?" Juror Ford. "A dead foetus wouldn't be abortion, would it?" The court: "Well, the authorities that I have been able to gather are in conflict upon that subject. The best definition I can give as to what constitutes abortion is as read to you gentlemen from the code." This reply of the court is alleged to be error because: (*a*) "The same instructed the jury that it would not be a defense to the bill of indictment should the foetus be dead at the time of the alleged operation." (*b*) "To charge the jury that the authorities differed on the subject was an expression of opinion by the court to the jury that it would make no difference whether or not the foetus was dead." (*c*) "This was equivalent to instrucing the jury that if they should believe from the evidence that the foetus was dead at the time of the alleged operation, it would still be their duty to

convict the defendant." (d) "This was confusing and misleading to the jury; was in direct conflict with and contrary to the law upon the subject the court was undertaking to instruct the jury, and was harmful and hurtful to the defendant." (e) "Because the court erred in not instructing the jury then and there that the child or fœtus must have been in fact·alive at the time of the alleged operation, or there could be no conviction of the defendant." These conclusions drawn by counsel for plaintiff in error from the statement of the judge are incorrect. Moreover, in the additional charge the court gave the jury, he really answered correctly the question, "A dead fœtus would not be abortion would it?"

5. The 5th ground of the motion alleges error "because said court erred in the trial of said case [in] failing to charge the jury that if after going through the evidence in the case they should find and believe that at the time the alleged offense was committed by the defendant upon the deceased, Virginia Clark, if committed at all, that the child or fœtus was not in fact alive, then in that event the defendant would not be guilty and it would be their duty to acquit him." To have so charged would have been error. In the first place, up to the time that Dr. Jones was called to see Mrs. Virginia Clark, there was no evidence from which the jury could have found that "the fœtus was not in fact alive." In the second place, such a charge would have been erroneous under the law of Georgia. Section 82 of the Penal Code of Georgia is as follows: "Any person who shall wilfully administer to any pregnant woman any medicine, drug or substance, or anything whatever, or shall employ any instrument or means whatever, with intent thereby to produce the miscarriage or abortion of any such woman, unless the same shall have been necessary to preserve the life of such woman, or shall have been advised by two physicians to be necessary for that purpose, shall be guilty of a misdemeanor." In such a case as the one we are considering it must be determined under this section whether the person operated upon was a "pregnant woman." Our Supreme Court has drawn a distinction between a "woman pregnant with child" and a "pregnant woman." The former, according to our appellate courts, is a "woman who is pregnant with an unborn child so far developed as to be quick— so far developed as to move in the mother's womb." *Hunter* v. *State*, 29 *Ga. App.* 366 (115 S. E. 277); *Summerlin* v. *State*, 150 *Ga.*

175, 176 (103 S. E. 461). There is no contention in this case that the woman operated on was pregnant with "an unborn child so far developed as to be quick," nor that the operation was necessary to preserve the life of the woman, nor that such operation had been advised by two physicians as necessary for that purpose. At the time that Mrs. Virginia Clark was operated upon was she a "pregnant woman?" In this case it was not necessary to prove more than this fact. · Our statute makes no distinction between a live and a dead fœtus; it simply says a "pregnant woman." In 1st Corpus Juris, 317, sec. 25, it is said: "It has already been seen that the word 'pregnant' is used to designate the condition of a woman from the moment that she conceives until she has been delivered of the child either in due course of nature or otherwise, so that *a woman who carries a fœtus in her womb is pregnant, whether the fœtus is living or dead.* (Italics ours.) Consequently, if the act of defendant was done not on the ground of removing a dead fœtus, but merely for the unlawful purpose of preventing the natural result of sexual intercourse, the fact that the fœtus was dead at the time of the act charged in the indictment is no defense, whether the statute makes the pregnancy of the woman an element of the offense or not." We think that this is in complete accord with our statute. As to when a woman is pregnant, see 1 R. C. L. 76, sec. 10; 1 C. J. 312, sec. 9; See also State *v.* Alcorn, 7 Idaho, 600, 64 Pac. 1014, 97 Am. R. 252); State *v.* Howard, 32 Vt. 380 (1). The case of Munk *v.* Frink, 81 Neb. 631, 116 N. W. 525, 17 L. R. A. (N. S.) 439, is a case in which a complaint was filed before the State board of health for the purpose of procuring an order to revoke the license of a physician for aiding or abetting in procuring a criminal abortion. In that case (pages 636, 637) is found a strong argument why the State should not be required to prove, under a charge such as is the one now under consideration, that the fœtus was dead at the time of the operation. In that case Fawcett, Commissioner, said: "Counsel for appellant contends that 'it follows that a sufficient complaint of unprofessional or dishonorable conduct within the meaning of section 14 must, in apt terms, charge the criminal destruction by the accused, either as principal or accessory, of a *vitalized human fœtus';* that 'there is no charge even by implication, of the destruction of a vitalized fœtus, which is the very essence of the crime of abortion.' Authori-

ties are not wanting to sustain this contention by counsel, but we fully concur in the following holding of the Supreme Court of Pennsylvania in Mills *v.* Commonwealth, supra: 'The next error assigned is that it ought to have been charged in the count that the woman had become quick. But, although it has been so held in Massachusetts and some other states, it is not, I apprehend, the law in Pennsylvania, and never ought to have been the law anywhere. It is not the murder of a living child which constitutes the offense, but the destruction of gestation by wicked means and against nature. The moment the womb is instinct with embryo life, and gestation has begun the crime may be perpetrated.' If the theory contended for by counsel for appellant should be sustained, it would be practically impossible to convict an abortionist for any abortion, or attempted abortion, during the first five months of pregnancy; for, if gestation had not proceeded to the period of quickening, there would be no way of disputing the testimony of the abortionist that what he removed from the woman was in fact a dead foetus. Even the woman herself could not dispute this testimony prior to pulsation following the quickening period. It would be giving unlimited license to the abortionist to ply his nefarious calling, providing he confined his criminal operations to the early months of gestation. We prefer to be in line with the Supreme Court of Pennsylvania, and say, although it has been so held in Massachusetts and some other states, it is not the law in Nebraska, and never ought to have been the law anywhere." The case of the State *v.* Alcorn, 7 Idaho, 599, was a prosecution for murder, where the death of the deceased was alleged to have resulted from an operation performed for the purpose of bringing about an abortion. In that case Chief Justice Quarles said: "The crime for which appellant has been convicted is one of the worst known to the law. An unnatural abortion brought about by means of drugs or instruments, violates decency, the best interests of society, the divine law, the law of nature, the criminal statutes of this state, and is not only destructive of life unborn, but places in jeopardy the life of a human being—the pregnant woman. . . This crime is one of grave consequences to society. The law prohibits it and prescribes severe penalties. The law ought to be strictly enforced." This court thoroughly approves the foregoing statement of Chief Justice Quarles.

6. There is ample evidence to support the finding of the jury; the presiding judge approved the verdict, and the court did not err in refusing a new trial.

*Judgment affirmed. Broyles, C. J., and Luke, J., concur.*