No. 38.—JOHN T. BOYD, plaintiff in error, *vs.* THE STATE OF
GEORGIA, defendant in error.

[1.] A principal in the *second* degree, may be tried before the principal in the
*first* degree.

[2.] A Juror was asked, "Do you reside in the City?" meaning the City of
Columbus, in the County of Muscogee, where the proceeding was pending.
He answered he did. "Have you lived *here* six months?" was the inquiry
next propounded. He replied that he had not. He was objected to and
discharged for cause—the Statute requiring a residence of six months to
qualify a Juror to sit in a criminal case. No complaint was made at the
time that the Court mistook the Juror's answer : nor was any attempt made
to show the Juror competent: *Held,* that Counsel, by their silence and fail-
ure to make such effort, must be considered as having acquiesced in the
construction put by the Court upon the Juror's answer.

[3.] An indictment for the murder of an officer need not charge that the per-
son killed was an officer ; but it will be sufficient if it contain the general
requisites of an indictment for murder.

[4.] Although the warrant under which an arrest is made be not strictly law-
ful, or if it express not the cause particularly enough, yet, if the matter be
within the jurisdiction of the Justice who issued it, the killing of the officer
in execution of such warrant is murder.

[5.] It is not error in the Court to omit to give in charge to the Jury portions
of the Penal Code, which have no application to the issue submitted, upon
the pleadings and proof.

[6.] Misdirection by the Court, upon an abstract principle of law, not apper-
taining to the issue, is no ground for a new trial.

[7.] If any Sheriff, under Sheriff or other officer who hath execution of pro-
cess be slain in doing his duty, it is murder in him who kills him, although
there was not any former malice betwixt them.

[8.] Ministers of justice, while in the execution of their offices, are under the
peculiar protection of the law—a protection founded in wisdom—and with-
out which, the public tranquility cannot be maintained, private property
secured, nor offenders of any kind be made amenable to justice.

Murder, in Muscogee Superior Court. Tried before Judge
CRAWFORD, June Term, 1854.

David Wright, as principal in the *first* degree, and John T.
Boyd, as principal in the *second* degree, were jointly indicted
for the murder of Mark Robinson. The defendants severed

and the Solicitor General elected to place Boyd, the principal in 2d degree, upon his trial first; which being allowed by the Court, is assigned as error.

One Kelly being called as a Juror, was asked by prisoner's Counsel if he lived in the City of Columbus? He answered yes. The State's Counsel then asked him "if he had resided here for six months?" He answered in the negative. The State's Counsel challenged him for cause. The Court understanding the last question to refer to the county sustained the challenge —Counsel for prisoner asking no questions and making no objections. Which decision is now assigned as error.

The Court admitted evidence to show that the deceased, Robinson, was Deputy Sheriff at the time of the homicide, and was acting in his official capacity. This decision is assigned as error.

The Court admitted in evidence a peace warrant against David Wright, and two warrants for a riot, severally, against Wright and Boyd, by virtue of which Robinson arrested Wright and Boyd at the time he was shot. The admission of this evidence is assigned as error.

Subsequently, the State's Counsel moved to withdraw from the Jury the consideration of the two warrants for a riot. The Court allowed the motion and this is assigned as error.

The Court charged the Jury, among other things, that they should find a general verdict of "guilty" or "not guilty." This charge is assigned as error.

The Court omitted to instruct the Jury as to the other grades of homicide—holding that there was no such offence as principal in the 2d degree in manslaughter. This omission by the Court is assigned as error.

A new trial was moved upon these several alleged errors, which being over-ruled, is also assigned as error.

WELBORN & CLARK, for plaintiff in error.

SOL. GEN. BROWN, and RAMSEY, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] Was it regular for the Court to suffer the principal in the *second* degree to be tried before the principal in the *first* degree? The affirmative of this proposition is fully sustained by the authorities.

"Principals in the *second* degree," says Mr. *Chitty*, "were formerly denominated and regarded as only accessories *at the fact.* And it seems that he who actually committed the crime, was alone guilty as principal; and those who were present aiding and assisting, were but in the nature of accessories, and could not be put upon their trial until the principal was first convicted. This distinction has, however, been long since exploded; and now the stroke is considered as constructively given by all who consent and were present at its infliction; and they may be put upon their trial though the actual slayer is neither outlawed nor found guilty." (1 *Chitty's Crim. Law*, 256, *citing* 9 *Coke*, 67, *b. Plowd.* 98, *a.* 1 *Hale*, 437, 438. *Hawkins*, *b.* 2 *c.* 20, §7.) These authorities we have examined, and they fully support the doctrine in the text, and are conclusive upon this point.

[2.] Should the State's Attorney have been permitted to set aside the Juror, Edward P. Kelly, for cause?

When this Juror was offered, the usual Statutory questions were propounded to him, in order to test his competency. Having answered them in the negative, he was put upon triors. He was then asked if he resided in the city? He said he did. Have you lived *here* six months? was the inquiry next propounded. He replied that he had not; whereupon, the Juror was discharged for cause. And the complaint is, that the Judge misapprehended Kelly's answer; that he did not intend to say that he had not lived in the County of Muscogee six months, but that he had not resided so long in the City of Columbus.

Suppose this were so, what was the duty of the prisoner's Counsel? He should have insisted, at the time, that the Court

Boyd *vs.* The State.

labored under a mistake as to the Juror's answer. By their silence they must be held to have acquiesced in the understanding of Judge CRAWFORD. Counsel are under obligations to the Court and to the country, as well as to their clients. And they must be required to keep and observe, in good faith, the former as well as the latter.

. But did the Court misunderstand the response of Mr. Kelly? We think not; there is not any necessary connection between the first and second questions, and the first and second answers. The Juror, it will be borne in mind, is in the courthouse of Muscogee County, where the trial is progressing; and when the Juror stated that he had not lived *here* six months, he must be considered as meaning in the *county* where the trial was had. Besides, it does not appear, nor was any attempt made to make it appear, that the Juror thus rejected was legally qualified to serve. The failure to make any effort to show his competency, is the best evidence, that if made, it would have proved unsuccessful. We are called upon, therefore, to pronounce the judgment of the Court below erroneous, for setting aside one as an exceptionable Juror, who was not proven to have been otherwise, nor any motion made to do so.

. [3.] The next error assigned is, in suffering the peace warrant to be read to the Jury. This process was issued in due form and by the proper officer, and placed in the hands of Mark Robinson, the Deputy Sheriff, by the Magistrate, to be executed. Being regular upon its face, we see no reason why it should have been withheld. But it is contended that this could not be done, there being no allegation in the indictment that the deceased was an officer acting in the discharge of his duty when killed. And this objection applies, not only to the peace warrant, but to all the testimony which went to establish the official character of the deceased. We know of no principle or practice which renders such an averment necessary in a bill of indictment. This fact, like any other ingredient, must be established to sustain the charge of murder. But neither this nor any other evidence need be set out in the record.

Mr. *Chitty*, in his work on *Criminal Law*, 3d *Vol. p.* 172,

lays it down expressly, that " where the indictment is for the murder of an officer, or in any case where the circumstances are complicated, it will be unnecessary to set out any of the details, and that the indictment will be sufficient, in such cases, if it contain the general requisites of an indictment for murder." And further—" that if more of the special circumstances in evidence of malice be stated, than is necessary, the prosecutor will not be compelled to prove them; but they may be rejected as surplusage." And he refers to *Mackalley's Case,* (*Croke, James,* 280.) The indictment in this case, on account of its minuteness, repetition and prolixity, will, a few years hence, be a curiosity to the legal antiquarian. It will be found *in extenso* in the 9th volume of *Coke's Reports.*

By the King's command, all the Judges of England were ordered to meet together, to resolve what the law was upon the record of conviction. Accordingly, they assembled " and heard Counsel learned upon the special verdict, as well of the prisoners as of the King; and the matter was very well argued on both sides, at two several days," when all the Judges of England and Barons of the Exchequer held, that " when an officer is slain, as in the case before them, there needs not a special indictment upon all the matter, to be drawn, *as in this case was done;* but a general indictment, that such a party, *ex malitia sua precogitata percussit, &c.* And although there be not proof made of any precedent malice, yet the indictment is good; for the law presumes malice." Judgment was given accordingly, and *Mackalley* was executed.

It is gratifying to find mature investigation upon every point decided in this case, so abundantly fortified.

[4.] It is assigned as error, that other warrants were allowed to go illegally to the Jury, and then to be withdrawn against the consent of the defendant. There were a couple of warrants sued out against Wright and Boyd, by one Nancy Johnson, and intended to charge them with the offence of a riot. The warrants were defective in not alleging that other persons were concerned in the offence; and it is argued that on account of this omission, no crime was charged. Mr. *Chit-*

*ty* states that a warrant is valid without setting forth any crime. (1 *Crim. Law*, 41. *See, also*, 2 *Hale*, 111. 1 *Hale*, 580, and *Dick. J. Warrant*, 1.) The authorities which seem to look contrary-wise have confounded the law as applicable to *commitments*, with that which relates to *warrants*. In commitments, it is always necessary to set out the charge or offence; but not so in warrants. Indeed, some of the cases go to the extent of maintaining that cases may occur in which it would be imprudent to let even the peace officer know the crime of which the party to be arrested is accused. (11 *State Trials by Hargrave*, 304, 323. *Com. Dig. Imprisonment*, 11, 7. *Bacon's Ab. Tresp. D*, 3.)

In Mackalley's case, to which I have before referred, it was *resolved*, amongst other things, that if there be error in awarding process, or in the mistake of one process for another, and an officer be slain in the execution thereof, the offender shall not have the advantage of such error; but that the resisting of the officer, when he comes to make an arrest in the King's name, is murder.

In *Hale's Pleas of the Crown*, 1 *Volume*, p. 460, we find this principle distinctly enunciated: "And although the warrant of the Justice be not in strictness lawful, as if it express not the cause particularly enough; yet, if the matter be within his jurisdiction as Justice of the Peace, the killing of the officer in execution of such warrant, is murder; for in such case the officer cannot dispute the validity of the warrant, if it be under seal of the Justice."

If this be the law, and who will doubt its reasonableness, it is decisive of this exception. It would be monstrous to lay down a different rule. It would put in jeopardy the life of every officer in the land. It never could be intended that they should determine, at their peril, the strict legal sufficiency of every precept placed in their hands.

If it were legal to admit this testimony, to withdraw it is no ground of complaint, on the part of the prisoner. Indeed, had the evidence been illegal, its withdrawal would have cured the

objection. *A fortiori* is the withdrawal of legal proof no error.

[5.] The next complaint is to the charge of the Court. His Honor, Judge CRAWFORD, instructed the Jury, "first, as to the definition of murder; and then, as to what constituted the offence of principal in the second degree. And secondly, that they must determine whether a murder has been committed; and if they should so find, then ascertain from the evidence, if the defendant was present; and if present, did he aid and abet in the perpetration of the crime? And if they should so find, then they would return a general verdict of guilty. But if the testimony should show that the allegations in the bill of indictment were untrue, then they should render a verdict of not guilty, there being no such offence as principal in the second degree, in manslaughter, known to the laws of Georgia."

This is the whole of the charge; and the errors assigned upon it are—

1st. In omitting to instruct the Jury in all the grades of homicide contained in the Penal Code.

2d. In charging the Jury as to the definition of murder only; and

3d. In instructing the Jury that they were compelled to find a general verdict, of guilty or not guilty.

[6.] It is conceded that if the evidence created a reasonable doubt as to the grade of the crime committed by the defendant, that the objection to the charge of the Court, or rather, its failure to charge, would have been well taken. It becomes necessary, therefore, to glance at the testimony. It may be thus briefly summed up: Wright and Boyd being charged with a violent trespass on the domicil of one Nancy Johnson, in the City of Columbus, crossed over on the opposite side of the river to avoid an arrest. At Gerard (Alabama) they were seen by the deceased and one Gamnul, late in the afternoon of the day preceding the homicide. They inquired of the deceased, who was Deputy Sheriff of Muscogee County, and, which fact was well known to them, if he had warrants for them? He replied that he had not, but that warrants had been issued;

and he advised them, if they wished to avoid an arrest, to keep on that side of the river. It is fairly inferable, that this visit was made to induce them to do so. They promised Robinson to keep out of the way, unless they concluded to come over and give themselves up or compromise with the prosecutrix. But contrary to this friendly warning on the part of the officer and promise on their part, they crossed the river at early nightfall. They were seen in the City of Columbus and conversed with by sundry persons, and avowed their determination to die rather than be taken. They passed the deceased in the street, but being partially disguised, supposed that he did not recognize them. They had been observed, however, and Robinson summoned a friend or two to his assistance, remarking, "that Boyd and Wright had come back, and he would be compelled to arrest them." They were standing near a grocery called "*Pleasant Hour!*" (Heaven save the mark!) Robinson walked up to them saying, "you are my prisoners—I have a warrant for both of you." And as soon as deceased laid his hand on Wright, he (Wright) jerked a pistol from his right side, and shot Robinson; and while he was falling, Boyd, who was a few paces off, also fired at him. And this constitutes the whole proof in the case. And there is not one mitigating circumstance to change its type or coloring.

We ask, what had the law of manslaughter to do with this case? What a mockery and farce for the presiding Judge to have instructed the Jury as to *involuntary* manslaughter in the commission of an unlawful act or a lawful act, without due degree of caution and circumspection! And yet, he is charged with having committed "manifest error" in omitting to do this. He would have been guilty of manifest folly if he had. He is required to instruct the Jury as to the law of the case, which is submitted to them. And this he did by defining murder, and giving them in charge the law as to principals in the second degree. It is right and proper for the Court to tell the Jury, if such and such things have been proven, that the law is so and so. Generalities, in charging, is worse than use-

less.   Instead of assisting, it but too often misleads the Jury. Read from the Alcoran or the Talmud, but not from a law book which does not apply to the particular case made by the pleadings and proof, and which the Jury has to try.   The charge, in this case, was succinct, but clear and pertinent.   There was no dispute as to the evidence.   The credit to be given to the witnesses the Court very properly left to the Jury.   If they believed the testimony, they were bound to convict the prisoner of the crime for which he was indicted.   If the proof was not trustworthy, an acquittal should have followed; and so the Court charged the Jury.

[7.]   In the leading case of Mackalley, to which I have several times before alluded, the whole bench, *nullo contradicente,* resolved, Chief Justice *Coke* being their mouth-piece, "that if any Sheriff, under Sheriff, Sergeant or officer who hath execution of process be slain in doing his duty, *it is murder in him who kills him,* although there were not any former malice betwixt them; for the execution of process is the life of the law; and, therefore, he who kills him shall lose his life; for that offence is *contra potestatem regis et legis;* and, therefore, in such case, there needs not any inquiry of malice."

As to the abstract proposition, of whether or not there can be a principal in the second degree in manslaughter, the Court may have been mistaken.   We are inclined to think the Court was.   There cannot, it is true, be accessories before the fact in manslaughter.   We see no reason why there may not be *at* the fact.   And principal in the second degree is but another name for accessories *at* the fact.   One thing is certain—Wright may have been convicted of murder, as he has been, and Boyd of manslaughter.

Are we constrained, then, by the New Trial Act, to reverse the judgment and remand this cause for a re-hearing?   It is no misdirection *against the prisoner*—and the words of the Statute require that it should, before the party can claim any benefit under the law.   It might just as well be said that a misdirection as to the law of *arson* was against the accused. The same Act requires, that if Counsel request the Court, in

writing, to give a legal charge, and he refuses to do it in the language required—that a new trial shall be granted.    Suppose that in this case the Court had been asked, in writing, to charge the Jury, that to constitute *burglary*, there must be both a breaking and entering, &c., and the Court had either declined or substituted a charge of its own, which was wrong, stating that the mere entering, &c. was sufficient, would we have sent the case back on that account? surely not.    Here the pleadings, it is true, put in issue the crime of manslaughter; for the indictment being for murder, put in issue not only that offence, but every lower grade of homicide also, just as though there were a separate count for each.    But the evidence introduced going to the crime of murder only, all the minor grades of homicide, although contained in the true bill, were, nevertheless, withdrawn or dropped, for want of proof in the issue finally submitted to the Jury.    An error in the charge, then, as to one of these minor offences, was necessarily an abstraction.

And this may be illustrated by a reference to the rules of pleading in civil cases.    An action of assumpsit is brought, in which are two counts—one on a promissory note, the other on an open account.    No proof is offered under the former as to the note; still, the Judge, in his charge to the Jury, trips in his instructions as to the law of promissory notes; still, the verdict of the Jury is based upon the second count only, and is right. Can the misdirection of the Court upon the law, as applicable to the first count, be made the ground of a new trial? surely not.    For notwithstanding the promissory note was put in issue by the declaration, yet no proof having been offered respecting it, it is necessarily withdrawn from the consideration of the Jury.    And this is the defendant's case.    Had there been a scintilla of proof to reduce the offence from murder to manslaughter, he would have been entitled to a new trial.    We would not have allowed ourselves to have speculated as to its weight.

And this disposes of all the grounds taken in the assignment of errors.

[8.]    Poor Robinson, with his last expiring breath, said to

his mother—"*it was hard.*" And it would be hard indeed, if while this young man, in the mild but manly discharge of his duty, is shot down like a dog, his murder should go unavenged by that law whose minister he was. Ministers of justice, while in the execution of their offices, are under the peculiar protection of the law—a protection founded in wisdom and in every principle of political equity; for without it the public tranquility cannot possibly be maintained or private property secured; nor, in the ordinary course of things, will offenders of any kind be amenable to justice.