## 4684. HEGWOOD v. THE STATE.

1. Where neither the evidence nor the defendant's statement, singly or conjointly, presents a theory upon which a charge of voluntary manslaughter can be based, it is error for the court to instruct the jury upon the law of voluntary manslaughter, and a verdict of that offense is unauthorized.

2. Under the evidence, a verdict of murder was demanded. If the statement of the accused presented the truth of the occurrence, he did not participate in any manner in the homicide, and was innocent of any offense. There was no fact or circumstance in evidence tending to support a theory of mutual combat, or that the homicide was the result of the heat of passion.

3. Neither under the evidence nor under the statement of the accused was the instruction by the court on the law of voluntary manslaughter pertinent or applicable, the instruction being that "if a person charged with murder in the first degree committed an assault on the deceased with a deadly weapon, but his intention to assault the deceased with a deadly weapon was unknown to the person charged with the commission of the offense as principal in the second degree, and his intention was to participate in an assault and battery only, and not to kill him, and he had no felonious design to kill, the principal in the second degree would only be guilty of voluntary manslaughter."

DECIDED APRIL 2, 1913.

Conviction of manslaughter; from Banks superior court—Judge Brand. November 20, 1912.

*Sam Kimzey*, for plaintiff in error.

*John B. Gamble*, solicitor-general, *Clifford Walker*, contra.

HILL, C. J. Pink Hegwood and Homer Hegwood were jointly indicted for murder, and, on separate trials, Pink Hegwood was convicted of voluntary manslaughter, and his codefendant of murder, with recommendation to life imprisonment. Pink Hegwood filed a motion for a new trial, which was overruled, and he brings error. The view that this court takes of the one controlling question in the case makes it unnecessary to consider any of the other grounds contained in the motion for a new trial; and this question is whether, under the evidence and the statement of the accused, made to the jury, there is any theory upon which the verdict of voluntary manslaughter can be supported. The trial judge, in his order overruling the motion for a new trial, states, that he charged the law of voluntary manslaughter because there was some evidence that Pink Hegwood and the decedent had a difference over which they quarreled, and about which they began a fight, which was subsequently joined in by Homer Hegwood; that there was ap-

parently mutual combat between Pink Hegwood and the decedent, and for this reason he thought, "and still thinks, that manslaughter was in the case." He further says, in his order, that from the State's evidence, there was room for doubt whether, if Homer intended to kill, Pink intended to participate in the act of killing, or only in an assault and battery; and that it would have been unfair to Pink not to have given him the benefit of the theory of manslaughter, arising from this doubt of his felonious intent, under the decision of the Supreme Court in the case of *Brown* v. *State, 28 Ga.* 199; and, therefore, that he instructed the jury on the doctrine of voluntary manslaughter as laid down in that case (p. 200, 4th headnote), to wit: "Presence and participation in the act of killing a human being is not evidence of consent and concurrence in the perpetration of the act by a defendant charged as aiding and abetting in the killing, unless he had a felonious design or participated in the felonious design of the person killing." Making a concrete application of this principle to the facts as construed by him, the learned trial judge further instructed the jury as follows: "If Homer Hegwood inflicted the blow which took the life of Murray, and he was moved by malice in doing so, and the defendant . . Pink was connected with this killing, and was then and there aiding and abetting Homer in the act of killing, and yet you do not believe that the defendant Pink intended to kill or intended to participate in the killing of Murray by Homer, then he would not be guilty of murder; and if you believe this to be the truth of the case you would be authorized to find the defendant Pink guilty of voluntary manslaughter. Though the defendant Pink Hegwood may have been connected with the killing of Murray by Homer, and was then and there present aiding and abetting in this act of killing, if this has been shown, and though you may believe Homer intended to kill the deceased and did kill him, still if you believe Pink's intention was to commit an assault or an assault and battery only, the offense of which he would be guilty would be voluntary manslaughter; and if you believe this to be the truth of the case, you would be authorized to find him guilty of voluntary manslaughter." Objection is made to this instruction, on the ground that the law therein enunciated was not applicable to the facts in the case and was not authorized by the evidence. This legal conception of

voluntary manslaughter was first announced in the decision in *Brown* v. *State,* supra, and was reannounced in the case of *Brooks* v. *State,* 128 *Ga.* 261 (57 S. E. 483, 12 L. R. A. (N. S.) 889). Unquestionably this instruction on the theory of voluntary manslaughter accounts for the verdict.

This court is not concerned with the soundness of the theory of voluntary manslaughter as thus announced in the two cases above cited, but, assuming the correctness of the doctrine thus laid down, it is only interested in determining whether this legal doctrine of voluntary manslaughter is applicable to any theory deducible from the evidence or from the statement of the accused. If so applicable, the verdict should stand; if not applicable, the verdict must be set aside. We have read the brief of evidence over very carefully several times, and we are utterly unable to deduce therefrom any circumstance or theory in support of the statement by the learned judge, in his order overruling the motion for a new trial, referred to above, that there is evidence—even a scintilla of evidence—in support of the theory of mutual combat between the decedent and Pink Hegwood, or between the decedent and the other defendant, Homer Hegwood; nor are we able to concur in the view of the trial judge that there was evidence tending to prove that Homer Hegwood was the perpetrator of the killing, with felonious intent, and that Pink, although participating, aiding and abetting Homer, nevertheless did so without a participation in Homer's felonious intent, and without himself intending to kill, and without knowledge that a deadly weapon was being used in a manner likely to produce death; and that the jury might be authorized to infer, from the evidence, that Pink's only intent was to commit the offense of assault, or assault and battery. The evidence for the State demands the conclusion that Pink Hegwood was the original aggressor; that he struck the decedent repeatedly over the head with a pistol; that he frequently declared while doing so that he intended to kill the decedent; that his brutal conduct had continued for several minutes before his brother Homer joined in the assault; that, after Homer joined in the assault, Pink continued his individual assault on the decedent; that he saw his brother Homer strike and assault the decedent (already in a dying condition) with a bottle, and participated with his brother in striking the decedent with rocks, and that together, acting in

concert, they both made repeated assaults upon the decedent with deadly weapons, and finally succeeded in killing him. There does not appear from the evidence the slightest provocation for the attack which these defendants made upon the decedent; the evidence discloses no provocation for the deadly assault, but it does disclose that before this assault, the defendant Pink Hegwood had declared that he intended to kill the old man and his son John. If it was possible to make a distinction between the brutal and felonious conduct of the two defendants, it would be in favor of Homer, and not Pink; for unquestionably Pink's brutal assaults were carried on before his brother participated in the attack, and were continued along with the assaults made by his brother, and, under the facts as shown by the evidence for the State, both defendants were equally guilty as the actual perpetrators of this crime, and there is no theory of the evidence upon which any logical or legal distinction can be made in their mutual crime. Indeed, the evidence is not clear as to whether the blows inflicted by Pink or those inflicted by Homer produced death, but the evidence tended to show that the combined blows inflicted by both with deadly weapons caused death. We are strengthened in this view (if, indeed, we need support other than that which we have drawn from the evidence) by the following statement in the order of the trial judge overruling the motion for a new trial: "Although all who witnessed and heard the trial of defendant were deeply impressed with the conviction that the old man's death was due to Pink's conduct, and that he deserved as great punishment as his brother Homer, it was a brutal and bloodthirsty assault on the part of both; they mercilessly attacked a helpless man who fled from them, crying for mercy." Entertaining this opinion of the evidence, the judge, in sentencing the plaintiff in error, very properly imposed the highest penalty attached by the law to the offense of which he was convicted; and if we were at liberty to do so, in the proper discharge of our duty, we might very well let the verdict stand, solely on the ground that the sentence of twenty years was virtually the same as the life sentence imposed upon Homer by the judge, and that, as substantial justice had been done as to Pink Hegwood, there was no reason for another trial. But we are not at liberty to do this, unless there is some theory of the evidence or of the defendant's statement at the trial that

would have authorized the charge of the court on the law of voluntary manslaughter, specifically excepted to in the motion for a new trial.

As before stated, the evidence for the State demanded a verdict of murder against both of the defendants. The statement of the defendant Pink Hegwood (the plaintiff in error) is in direct conflict with the evidence for the State. He denies that any difficulty took place between him and his brother Homer and the decedent, and says that neither he nor his brother contributed in any manner to the homicide, but that it occurred either from heart failure, superinduced by excessive use of alcohol, or by the criminal conduct of the son of the decedent. The jury did not believe this statement, and they must have entertained a reasonable doubt as to the truth of the evidence for the State. In this exigency the jury had no right to find any compromise verdict; nor was the trial judge authorized to suggest such character of verdict by his charge, unless such a verdict was reasonably deducible from the evidence and the law applicable thereto, or from the statement of the accused. The jury being without legal right to compromise, if they believed neither the evidence for the State nor the statement of the accused, the mental uncertainty thus produced might have resulted either in an acquittal or a mistrial; and the accused was entitled to either solution of this situation. In a juridic sense, this court can not say that under the evidence and the statement a verdict of guilty was demanded.

Neither has this court authority to permit this verdict to stand upon the idea that substantial justice has been done. The theory of substantial justice is a mere abstraction. It can have no place in a court whose constitutional limitation is to correct "errors of law." Fallible and finite human conception makes it impossible to accept this abstraction as a safe rule of judicial conduct. Frequently men differ as to what constitutes substantial justice. Legal justice—that is, justice under well-settled and fixed rules of law—is the only safe course to pursue; and this character of justice should be the goal of judicial research and declaration. In determining what are errors of law, this court is bound primarily by the decisions fo the Supreme Court of this State as binding precedents. The Supreme Court has repeatedly decided that where the offense of voluntary manslaughter was not involved, and

neither the evidence nor the defendant's statement, singly or conjointly, presented a theory upon which a charge of voluntary manslaughter could be based, a verdict finding the accused guilty of that offense was contrary to the evidence, and was an error of law, for which a new trial must be granted. Among many decisions thus holding, we cite the following: *Hicks* v. *State,* 126 *Ga.* 80 (54 S. E. 807); *James* v. *State,* 123 *Ga.* 548 (51 S. E. 577); *McBeth* v. *State,* 122 *Ga.* 737 (50 S. E. 931); *Berry* v. *State,* 122 *Ga.* 429 (50 S. E. 345); *Tolbirt* v. *State,* 119 *Ga.* 970 (47 S. E. 544). This court has in repeated decisions followed this ruling; and, therefore, entertaining the view of the evidence and the statement of the accused above discussed, we are compelled to grant another trial. We confess that we are reluctant to do this, not because of any reluctance to accept and follow the decisions of the Supreme Court above cited, but because, under the evidence, the verdict was more favorable to the plaintiff in error than he was entitled to, though not so favorable as he might have received if the jury were unauthorized to solve doubts by accepting a compromise. It is perfectly clear to our minds that the verdict of voluntary manslaughter was induced by the charge of the court on that subject, and that this charge, while it may be a correct statement of the law in the abstract, was without a scintilla of evidence to support it; that it was not based on a theory deducible from either the evidence or the statement of the accused, singly or conjointly considered, and therefore was an error of law from which a reversal must inevitably result. *Judgment reversed.*