## BAKER *v.* THE STATE.

1. The court did not err in charging the jury as follows: "I charge you that if you find from this testimony, when you have considered it all, the defendant, George Baker, did not participate in the killing, that he did not go there with the common intent nor in conspiracy with his brother, to kill or murder the deceased, Mr. Morton, that he had nothing to do with it, then he would not be guilty, and you would so find. I charge you, however, that if you believe from the evidence, although you should believe he did not do the shooting, the defendant, George Baker, and his brother, with a common intent, took the life of the deceased, Mr. Morton, and that they did it with malice, as charged in the bill of indictment, it would be immaterial whether the defendant had a pistol, or whether he shot or not, he would be equally guilty with the person shooting, if he went there with such common intent to kill and murder the deceased, Mr. Morton."

2. The court charged the jury as follows: "I will give you another principle in charge: In case you believe from the evidence this was a mutual combat, that is, a mutual fight between these two parties, in which each of them was equally ready and willing to fight; if you find that, and you will determine from the evidence, you will not confuse this principle of law given you in charge. You will determine whether this was a mutual fight from the evidence, whether each of them was equally ready and willing to fight; and if you find

that to be true, then I charge you this principle of law would apply to the case: If a person kill another in his defense, it must appear that the danger was urgent and pressing at the time of the shooting; that in order to save his own life the killing of the other was absolutely necessary; and it must appear also that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline any further struggle before the mortal blow was given. You will determine from the evidence whether or not this applies to the facts, that is, whether this was a mutual combat between them. In mutual combat each party is as willing and ready to fight as the other party. You will determine that; and if that is true, you will apply this principle of law just given you. I charge you if you find this was a mutual combat, and you find that he was not justifiable under the evidence, then you might consider, under the evidence, the question of manslaughter; and I will give you the rule as to voluntary manslaughter. Manslaughter is the unlawful killing of a human creature without malice, either express or implied, and without any mixture of deliberation whatever, which may be voluntary, upon a sudden heat of passion, or involuntary, in the commission of an unlawful act. I charge you that there would not be any involuntary manslaughter in this case; it would be voluntary, if it was manslaughter at all. As I say, if you find this was a mutual combat, and you find he was not justifiable under the rule given you in charge under this section, then you will consider the question of voluntary manslaughter, and determine whether he is guilty of voluntary manslaughter or not." This charge was not error for any of the reasons assigned.

3. An exception alleging error in the whole charge will not be considered, unless the charge is wrong as a whole; and this is not true of the whole charge. *Anderson* v. *Southern Ry. Co.*, 107 *Ga.* 500 (33 S. E. 644) ; *Frank* v. *Adams*, 144 *Ga.* 270 (2) (87 S. E. 3).

4. The verdict was supported by evidence.

No. 3335. DECEMBER 22, 1922.

Indictment for murder. Before Judge Irwin. Walker superior court. June 10, 1922.

*Oscar N. Chambers* and *R. M. W. Glenn*, for plaintiff in error.

*George M. Napier, attorney-general, Eugene S. Taylor, solicitor-general, Seward M. Smith, assistant attorney-general,* and *Rosser & Shaw*, contra.

GILBERT, J. 1. The charge of the court complained of in the first ground of the amendment to the motion for a new trial, which appears in full in the first headnote, in substance instructed the jury, first, that if the defendant did not participate in the killing, if he did not go there with the common intent, nor in conspiracy with his brother, to kill or murder the deceased, and if he had nothing to do with it, then he would not be guilty, and the jury should so find; but, second, that if the jury should believe from the evi-

dence, although they should believe that the defendant did not do the shooting, that the defendant and his brother, with a common intent, took the life of the deceased, and that they did it with malice, as charged in the indictment, it would be immaterial whether the defendant had a pistol, or shot or not, he would be equally guilty with the person shooting, if he went there with such common intent to kill and murder the deceased. The first part of this charge informed the jury that if the defendant did not participate in the homicide, if he did not go to the scene of the killing with a common intent, nor in conspiracy with his brother, to murder the deceased, and if he had nothing to do with it, he would not be guilty. Clearly, if this state of things existed, the defendant would be innocent.

The second portion instructed the jury that if they believed from the evidence, although they should believe that the defendant did not shoot, that the defendant and his brother with a common intent took the life of the· deceased, with malice, as charged in the indictment, it would be immaterial whether the defendant had a pistol, or shot or not, if he went to the scene of the homicide with such common intent to kill and murder the deceased. It is alleged that this charge is contradictory and tended to confuse the jury. We see no such destructive or obscuring contradiction between the two portions as to make the second section destroy or darken the first section, and thus confuse and mislead the jury.

It is next urged that this instruction is an erroneous statement. The error insisted upon is, that this charge left the jury to act upon their belief, without instructing them that such common intent and purpose must be shown by the evidence beyond a reasonable doubt. Verdicts are always based upon the belief of juries. The judge, elsewhere in his charge, told the jury, that the guilt of the accused must be proved beyond a reasonable doubt. He did not have to repeat this with each separate instruction.

It is next insisted that this charge is error, because the court instructed the jury that if the defendant went with his brother to murder the deceased, he would be guilty whether the defendant aided or abetted his brother in the actual commission of the murder. Suffice it to say that the judge did not so charge the jury. He did not instruct the jury that the presence of the defendant and the existence of such common intent would make him guilty. What

the court did tell the jury was, that these factors, and the taking of the life of the deceased by the defendant and his brother, with malice, as charged in the indictment, would make him guilty of murder. If the defendant and his brother took the life of the deceased, necessarily this involved aiding and abetting the defendant in the commission of the murder. *Johnson* v. *State,* 152 *Ga.* 457 (2) (110 S. E. 211).

2. The charge complained of in the second ground of the amendment to the motion for a new trial, which is quoted in full in the second headnote, is not erroneous for any of the reasons assigned. The Justices are unanimously of the opinion that the law of voluntary manslaughter was not involved under the facts of the case; and that where voluntary manslaughter is not involved under the proof, an instruction thereon should not be given. They further agree, in accordance with a long line of decisions, that where the defendant was not convicted of voluntary manslaughter, and under the evidence voluntary manslaughter was not involved, any errors committed by the court in charging upon that subject are not cause for the grant of a new trial. The charge, however, was not erroneous as against the defendant, but was favorable to him. The Justices are a unit in sustaining the trial court on every assignment of error save that in the second ground of the amendment to the motion for a new trial. An examination of that ground of the motion will show that there is no complaint and no error is assigned on the ground that section 73 of the Penal Code was given in charge. The rule is unchallenged that a judgment will not be reversed on a ground not made in the motion for a new trial. In the words of the record, " Movant respectfully insists that the charge of the court on the question of considering the law of voluntary manslaughter, *and in this connection,* [italics ours] the law of mutual combat, was erroneous." Then follows the excerpt from the charge of the court of which complaint is made. This charge is set out in full in the second headnote. In this charge it will be observed that the court instructed the jury to determine from the evidence whether or not there was mutual combat, defined the meaning of mutual combat, and instructed the jury that if they should find a mutual combat and that the accused was not justifiable under the evidence, then they might consider, under the evidence, the question of voluntary manslaugh-

ter, afterwards defining that degree of homicide. Now, bearing in mind that movant complained above of the charge on the subject of mutual combat in connection with voluntary manslaughter, it is essential to consider the specific assignments of error which follow the quoted excerpt. They are as follows: " (*a*) Because said charge restricted and confined the jury to consideration of mutual combat as defined in the following language: ' Each party must be as willing and ready to fight as the other party,' before the jury was authorized to consider at all the question of voluntary manslaughter." Obviously here is no complaint as to the charge on Penal Code § 73, except in so far as it limited the jury on the question of voluntary manslaughter. " (*b*) Movant contends that by this restriction in the court's charge movant was deprived of the chance to have the jury find him guilty of the less offense of manslaughter, because said charge instructed the jury that before they could consider reducing the offense from murder they must first find that there was a mutual combat between the defendant and the deceased, in which each party was as willing and ready to fight as the other," etc. Here, again, the complaint is that the consideration of voluntary manslaughter was restricted to the event of the jury finding mutual combat. " (*c*) That while the definition of manslaughter was finally given to the jury, it was closely coupled with the immediately preceding and connected statement that ' if you find this was a mutual combat and he was not justifiable under the evidence, then you might consider, under the evidence, the law of manslaughter; and I will give you the rule as to voluntary manslaughter.' " Here, again, plainly the complaint was that the jury was limited in the consideration of the law of manslaughter to a finding that there was mutual combat. " (*d*) Movant respectfully insists that the jury should have been allowed to consider the question whether he was guilty of voluntary manslaughter or not, regardless of whether each party was as ready and willing to fight as the other; that the jury might well have found from the evidence and the defendant's statement that it was not such a mutual combat, and yet that the defendant was neither guilty of murder nor justifiable in what he did; that they might have found that defendant participated unlawfully in the homicide without malice or deliberation, and yet without there being such a mutual combat as defined by the court. Movant respectfully

insists that in case of doubt as to the offense being committed with malice, which would make it murder, the jury should have been permitted to consider the whole law of voluntary manslaughter, without the restriction imposed by the court's definition of mutual combat." Here, again, there is no complaint that the court charged the law as embodied in section 73 of the Penal Code, but only that the court restricted the jury in regard to voluntary manslaughter. " (e) Movant respectfully insists that said charge was erroneous and confusing, and that it did confuse the jury, to the prejudice of the defendant." It is not believed that it will require any argument, under the facts of the case and what has already been said, to show that this criticism is without merit. The above shows minutely what assignments of error were contained in the second ground of the amended motion. When we turn to the briefs for the plaintiff in error, of which there are two, we find that counsel for the accused construed the assignment of error in the second ground of the amended motion as here contended. In one of the briefs we find the following language: "This charge is not only confusing and did confuse the jury, *and have the effect of restricting the jury in considering the law of voluntary manslaughter to the sole and only reason that each party was as ready and willing to fight as the other. . . The evidence in this case demanded that the law of manslaughter should have been given without any restriction.*" [Italics ours]. In the other brief we find the following: " The court erred in not instructing the jury more fully and clearly on the question of manslaughter, and . . . restricted the jury to consideration of the question of mutual combat as defined by the court, and on the conditions and restrictions imposed, as follows: ' In mutual combat each party is as willing and ready to fight as the other party. You will determine that; and if that is true, you will apply this principle of law just given you. I charge you that if you find this was a mutual combat, and you find he was not justifiable under the evidence, then you might consider under the evidence the question of manslaughter." From a consideration of what has been said, it is confidently believed that there is no escape from the contention that the movant does not complain that section 73 of the Penal Code was given in charge; but his complaint in that respect is based only on the ground that the charge restricted the jury, in the

46

consideration of the issue of voluntary manslaughter, to the event that they should find both parties were ready and willing to fight, making a case of mutual combat.

3. The third headnote does not require elaboration.

4. To any unbiased mind the facts as shown by the record show a case of murder both shocking and brutal. The deceased was an old man sixty-five to seventy years of age, an officer of the law, a deputy sheriff. The officer represented the law of a sovereign State. At the time of the homicide he was at a railway station for the purpose of meeting his daughter and her small child. Throughout the evidence no other motive appears for the presence of the deceased, save to meet the daughter and her child; and at the time the difficulty began he was discussing with his daughter an injury to the child's arm. The defendant, together with his brother, arrived at the station, Durham, on the same train with the daughter. The defendant was drunk, had conducted himself in a manner obnoxious to more than one person on the train, where he was armed with a blue steel pistol. The conductor of the train narrowly escaped a difficulty with him, and his brother threatened to shoot the conductor. The accused drew a pistol on a passenger because the latter refused to take a proffered drink of whisky. On arriving at Durham the defendant approached the deceased and said to him, " You have a warrant for us, have you? Now, God damn you, serve it if you think you can." The evidence is substantially without conflict that the difficulty was started by the defendant and his brother in approaching the deceased while they were intoxicated, armed, and in the mood for a difficulty. When he tried to reason with them they defied him, and the defendant assaulted him. Even the brother of this defendant, jointly indicted with him, testified to the truth of this fact. The only variation is found in the statement of the accused, and he described the beginning of the difficulty by saying that " me and the deceased got into it, and I started off from the deceased the best I remember, and when I did that he gave me a shove in the back, and I slapped at him, and then deceased began to shoot." According to the evidence, as soon as the old man had received his death wounds the defendant or Frank [Ralph?] Baker, witness did not know which, said, " How do you like that, is that hot enough for you, or do you want some more? " During the conversation that

preceded the shooting Ralph Baker, codefendant, was to the side and to the rear of the deceased with his drawn pistol held behind his back, thus making certain that the deceased should have absolutely no chance for his life. In no part of the evidence, nor in any part of the statement, is there any suggestion that the deceased began the difficulty or made the first assault on either of the defendants, nor that he did or said anything that would bring into the case the issue of manslaughter on any theory whatever. The facts of the case show the homicide to be practically without justification or mitigation.

The case is in some respects like that of *Boyd* v. *State,* 17 *Ga.* 194, but the facts show less mitigation than in the *Boyd* case. Boyd killed a deputy sheriff of Muscogee County. Boyd and another approached the officer and inquired if he had warrants for them. He replied that he had not, but that warrants had been issued, and advised them, if they wished to avoid arrest, to keep on the other side of the river, in Alabama. They promised to do so unless they concluded to come over and surrender. Contrary to this friendly warning on the part of the officer, they returned to Columbus, avowing that they were determined to die rather than be taken. They saw the officer and heard him summon assistance, saying that he would be compelled to arrest them. The officer approached Boyd and companion, saying, " You are my prisoners; I have a warrant for both of you." As soon as the officer laid his hand on one of them, the latter drew his pistol and shot the officer. The other accused fired while the officer was falling. This court in its opinion, on page 201, said: " There is not one mitigating circumstance," and on page 204: " It would be hard indeed, if while this young man, in the mild but manly discharge of his duty, is shot down like a dog, his murder should go unavenged by that law whose minister he was. Ministers of justice, while in the execution of their offices, are under the peculiar protection of the law — a protection founded in wisdom and in every principle of political equity; for without it the public tranquility cannot possibly be maintained or private property secured; nor, in the ordinary course of things, will offenders of any kind be amenable to justice." In the case now before us the deceased, though an arresting officer, was making no effort to arrest the accused or either of them, nor to in any way molest or disturb their freedom.

BAKER *v.* STATE.

He even disclaimed having any warrant for their arrest, and endeavored to reason with them, while they, aroused and inflamed under the influence of intoxicating liquors, were bent upon raising a difficulty. Under these circumstances the verdict of guilty in this case, returned by a supposedly fair and impartial jury after hearing the evidence, which would have justified no other verdict, should not be set aside except for reasons which are clearly. demanded under established rules of law. We are reminded that a human life is at stake. The reply is that the lives of thousands of law-abiding citizens are constantly at stake from men who will not abide by the law, who arouse their passions abnormally by intoxication while they are defying the law of the land by carrying deadly and life-destroying weapons. The writer believes that no State should permit the sale and delivery of such weapons to its citizens, and the fact that it is permitted is a shame and a blot upon a government claiming to be humane and civilized. It shocks the moral sense to reflect upon this circumstance where an aged and law-abiding citizen, commissioned as an instrument of the government to suppress crime and to protect the peace of society, is subject to lose his life in the manner here shown.

*Judgment affirmed. All the Justices concur except Hines, J., dissenting.*

ATKINSON, J., concurs in the judgment.

HINES, J. dissenting. The jury found the defendant guilty of murder, without recommendation; and he has been sentenced to pay the extreme penalty of the law for this offense. With this result, or the severity and barbarity of the punishment, this court would have nothing to do, if the jury had been given proper instructions upon the law by the trial court for their guidance in reaching the verdict which they rendered; but in a case involving human life, this court should scan with clearer scrutiny errors alleged to have been committed by the trial judge in his instructions to the jury, than in a case of less gravity. The defendant, in the second ground of his amendment to his motion for new trial, complains of the charge of the court which is set out in the second headnote of the opinion in this case. This instruction consists of two branches. The first of these deals with mutual combat. The court left to the jury the determination of the question whether mutual combat was involved under the evidence; and then in-

structed them, if they found that this was a case of mutual combat, that section 73 of the Penal Code was applicable, and the court then charged the principle of self-defense laid down in said section. In the second division of this charge the judge instructed the jury that if they found that this was a case of mutual combat, and that the defendant was not justifiable under the evidence, then they might consider, under the evidence, the question of manslaughter; and he then gave to the jury the definition of manslaughter contained in section 64 of the Penal Code.

I will deal with the second division of this instruction first. The majority of the court hold " that the law of voluntary manslaughter was not involved under the facts of the case; and that where voluntary manslaughter is not involved under the proof, an instruction thereon should not be given." So, according to the opinion of the majority of the court, the court below erred in giving in charge to the jury the second division of the instruction complained of. *Kelly* v. *State,* 145 *Ga.* 210 (88 S. E. 822); *Hegwood* v. *State,* 12 *Ga. App.* 566 (77 S. E. 886) ; *Jones* v. *State,* 147 *Ga.* 356 (94 S. E. 248). But as the defendant was not convicted of voluntary manslaughter, any errors committed by the court in charging or omitting to charge upon voluntary manslaughter will not work the grant of a new trial. I refer to this portion of this instruction simply to call attention to the fact that the majority concede that it is erroneous.

I deal next with the first branch or division of these instructions. The court gave in charge to the jury the law of mutual combat as embraced in the Penal Code (1910), § 73. When mutual combat is not involved under the proof, it is error to charge this principle of law. *Lowman* v. *State,* 109 *Ga.* 501 (34 S. E. 1019); *Jordan* v. *State,* 117 *Ga.* 405 (43 S. E. 747) ; *James* v. *State,* 123 *Ga.* 548 (2) (51 S. E. 577) ; *McCray* v. *State,* 134 *Ga.* 416 (13a) (68 S. E. 62, 20 Ann. Cas. 101) ; *Brown* v. *State,* 151 *Ga.* 497 (107 S. E. 536). The majority of the court do not controvert this principle of law. They can not dispute this law. They do not dispute the fact that the trial judge gave in charge the law of mutual combat. Then how do they escape the conclusion that a new trial should be granted the defendant? The majority assert that " no error is assigned on the ground that section 73 was given in charge;" and for this reason, in a case involving human life,

they refuse to consider this gross and glaring error, on a purely technical ground. But I traverse the statement that there is no such assignment of error. In the caption of this ground of the motion for new trial is the language: " Movant respectfully insists that the charge of the court on the question of considering the law of voluntary manslaughter, and, in this connection, the law of mutual combat, was erroneous." Here the defendant does not complain of only a part of this charge, but of the whole charge embraced in this ground. He insists that the charge of the court, on the law of voluntary manslaughter, and in this connection the law of mutual combat, was erroneous. The court charged the law of voluntary manslaughter and of mutual combat in the same connection. The two subjects were united and embraced in the same instruction. The defendant does not allege that the portion of the instruction on manslaughter is erroneous because given in connection with the law of mutual combat. He asserts that the charge on both branches of the law is erroneous. " Where the charge complained of appears on its face to be free from error, and no specific assignment of error is made on it, this court can not consider it. If the error is apparent, the charge may be considered on a general complaint that it is error." *Hunley* v. *State,* 104 *Ga.* 755 (30 S. E. 958) ; *Anderson* v. *So. Ry. Co.,* 107 *Ga.* 500, 510 (33 S. E. 644). Here the error is apparent on the face of the charge complained of. As a whole it is erroneous. Both of its parts are erroneous. So it is the solemn and sacred duty of this court to consider the assignment of error that this charge is erroneous.

But this is not all. Among other exceptions to this charge is this: " ( *e* ) Movant respectfully insists that said charge was erroneous and confusing, and that it did confuse the jury, to the prejudice of the defendant." Here the defendant specifically alleges that this charge was erroneous, confusing, and did confuse the jury to his prejudice. In my opinion, all of these complaints are well founded. The error alleged is that this instruction is erroneous; and the assignment of error is sufficient to require this court, in a case of life and death, to pass upon this ground upon its merits. In a case of such gravity, I can not indulge " in dividing a hair between North and North-west side," in order to escape the grant of a new trial when substantial and prejudicial

error has been committed against the defendant. I will not resort to quibbling or to technicalities to avoid granting to this unfortunate wretch his just dues under the law. It seems to me that the majority are unduly stressing the importance of "mint and anise and cummin, and have omitted the weightier matters of the law." Matt. 23:23. I have given to this case long and patient consideration; and I feel constrained to dissent from the conclusion reached by the majority of the court.