1. The general grounds are without merit.
2. 3. The trial court may restrict a cross-examination to questions material to the issues, and it is not error to refuse to permit questions on cross-examination unless it appears that they are material at the time of the ruling.
4. "No proposition of law can be laid down without some implication of a state of facts as by possibility existing."
5. It is not error to refuse to give a written request where the general charge fully covers the principle involved in the request.
6. "Alibi, as a defense, involves the impossibility of the accused's presence at the scene of the offense at the time of its commission."
7. The charge of the court as a whole shows no error.
 DECIDED DECEMBER 5, 1945.
The defendant was convicted of voluntary manslaughter on a charge of murder. A motion for a new trial was filed upon the general grounds. Six special grounds were added by amendment. The motion was overruled, and the defendant assigns error on this judgment.
The evidence shows that Bud Heard, chief witness for the State, testified as follows: "On March 11 this year 1 was with Diamond Herd out here in Glennwood when he got cut, that *Page 272 
is in Winder, Barrow County, Georgia. I am no kin to Diamond Herd, we spell our names different, we were just friends. My brother Paul got knocked in the head; me and Diamond Herd and Allen Griffith, who is called `Little Boy,' took my brother Paul to his home, pulled off his clothes and put him to bed, and we set down. Little Boy went out and in a few minutes he come back and said, `Bud, them sawmill boys is down to Miss Julia Griffith's and I think the one what hit Paul is down there.' I asked him if he would go with me back down there. Me and Diamond and Little Boy went on out to the corner of the road. I wanted to find out what was the trouble between them and Paul. I said to Little Boy, `You know them;' I didn't, and I asked him what was their names, and he told me one was named Cleveland, and I called Cleveland, and he come up there, and I said, `Cleveland, my brother Paul got knocked in the head a while ago, . . one of the sawmill boys hit him, and I come by to see what was the trouble.' And Cleveland said, `Bud, didn't none of the sawmill boys hit him. I'll tell you what, I'll go with you to Paul's and prove to Paul didn't neither one of the sawmill boys hit him.' We made a step to go, and Jimmie Dorsey made a step closer to Diamond and said, `What in the hell you got to do with it?' and Diamond said, `I ain't got nothing to do with it, what you got to do with it?' And he said `nothing,' and Diamond run, and this boy run after him and hit him and he fell, and he got down over him and hit him in the back again. Diamond did not have anything in his hand when Jimmie cut him. Diamond did not make any attempt to hit Jimmie. Then Jimmie just goes on out the road, he never said nothing. I went to Diamond. I stayed with him, and he didn't live but just a few minutes. He never did speak. . . I don't know how many wounds was on him. I saw the wound in his chest. I could stick my thumb in it. He bled freely from the wound. . . I was close enough to Diamond to see that he did not have any weapon. I was eight steps from him, I guess. After Diamond was stabbed he run about thirty steps, I reckon. Jimmie was right behind him as he ran, and when he fell Jimmie struck him again."
The embalmer testified in part as follows: "I am a licensed embalmer. I prepared the body of Diamond Herd for burial. I found some marks on his nose, chest, and forehead, and a large incision right into his heart and two small ones in his back. The one *Page 273 
in his heart caused his death. It was about one inch long. It went all the way into his heart. The small ones in his back were about middle way down. They were about a half inch deep and along stab wounds and were about four or five inches apart."
The above evidence is substantially all that the State introduced bearing upon the actual killing, and the chief evidence upon which it relied for a conviction.
The defendant claimed justifiable homicide, and that he was not with the other sawmill boys at Julia Griffith's house; that he was at the home of one Susana Wells, and left there and was on his way to the sawmill "shack," and that as he was going along the street he saw a crowd talking, but it was dark and he did not know who they were, and as he came by them Diamond Herd was standing near where he came along, and Diamond Herd said: "Here is one of the . . s.o.b.s., I will get him." He had a piece of iron in his hand, and made "at me with it, and I throwed up my arm to keep him from hitting me. I stobbed him. I didn't mean to kill him. He scared me so bad I didn't know what to do; and one of the boys went down there where he was, and come back and said: `You done messed up that boy,' and I said, `I did,' and he said `Yes;' and I went down there and he was still breathing, and I said, `I am going to police headquarters and give up,' and I goes on up to the corner and my mind changed, and I said, `If he's hurt bad, they'll come and get me, and I'll go on home,' and I was hungry anyway, and I went on down to the shack and got something to eat and pulled off my clothes and went to bed, and shortly after I got in there the sheriff come. I was sorry I done it, but I was trying to keep him from hurting me."
The defendant introduced in support of his defense several witnesses corroborating his contentions.
The above represents the substantial contentions of the State and the defendant. There is other evidence pertaining to particular issues raised, some of which we will refer to in the discussion of the case.
1. While counsel for the defendant expressly states that he does not abandon any of the assignments of error, he really argues only one question, citing authorities on which he *Page 274 
seeks a reversal. This contention is that, under the evidence, the defendant was guilty of murder or nothing, and that, under the evidence, his conviction of voluntary manslaughter was unauthorized and the court was unauthorized to submit that question to the jury. To sustain this contention, counsel cites and relies upon the cases of Kendrick v. State, 113 Ga. 761
(39 S.E. 286); Tolbirt v. State, 119 Ga. 970
(47 S.E. 544); Miller v. State, 139 Ga. 716, 720 (78 S.E. 181);Hegwood v. State, 12 Ga. App. 570, 571, (77 S.E. 886). There is no difference of opinion concerning the principle that, unless the evidence warrants it in a trial for murder, it is reversible error to submit the question of voluntary manslaughter. If the evidence demands a conviction for murder or for acquittal, then a conviction for voluntary manslaughter is erroneous and unauthorized. We have read the brief of evidence in the instant case very carefully, and have compared this evidence with the evidence in the cases cited by counsel for the defendant (insofar as we were able to ascertain the evidence from the opinions cited). It is our opinion that, under the facts of the instant case, the court did not err in submitting the question of voluntary manslaughter. It would seem from the evidence in this case that one set of negroes became enraged against another crowd, and before the homicide in question there had been difficulty between the two gangs — a member of one striking the brother of the other, and then the other following up that gang, one of whom had struck a member belonging to the opposite gang. It is quite clear from the evidence here that the deceased belonged to one gang and the defendant belonged to the other gang. From these previous difficulties, there seems to be little doubt that bad blood existed between them. It is our opinion that such a state of facts differentiates the instant case from those cited in the defendant's behalf, which we have enumerated above. Certainly we think that it may be stated with assurance that the evidence in the instant case is sufficient to raise a doubt as to whether voluntary manslaughter was involved. This being true, the court did not err in submitting that issue, and the verdict of the jury in accordance therewith is valid. Without going into any great length on this question, there are many decisions of this court and the Supreme Court to the effect that, if the evidence is doubtful on such an issue, it is the duty of the court to submit the question and let the jury determine it. We will cite only one case *Page 275 
on this question. In Jackson v. State, 43 Ga. App. 468
(159 S.E. 293), this court, quoting from a decision of the Supreme Court, said: "`Where there is evidence sufficient to raise a doubt, however slight, upon the question whether the homicide was murder or manslaughter, voluntary or involuntary, it is the duty of the court to charge on all these grades of homicide.' Applying the foregoing rule to the evidence in the case at bar, the trial judge erred in failing to charge the law of involuntary manslaughter; and for this reason alone the judgment is reversed." Note the many citations in that case. In our view of the instant case, if the court had not submitted the question of voluntary manslaughter, and the jury had found the accused guilty of murder, which we think they could have done under the evidence, the refusal to charge voluntary manslaughter would have subjected the court to reversal. The assignments of error on the general grounds are without merit.
2. Special ground 1 assigns error because, when Bud Heard, a chief witness for the State, was on the stand, the State's attorney sought to question him on cross-examination as to the cause of the brother of the witness, Paul Heard, getting knocked in the head; and also as to the continued hostile acts of the witness from the time his brother Paul was struck in the head until the time of the killing. It is stated in this ground that the purpose of this line of cross-questioning was to show the connection of the witness with the assault on Paul Heard, his brother, and his connection thereafter with Diamond Herd, the deceased. It is contended in this ground that this evidence was material to the defendant's cause for many reasons, which we will not here relate in detail except to say that it is contended in this ground in effect that the court should have permitted counsel for the defendant to have gone into more detail concerning the conduct of the witness, Bud Heard, and the conduct of the deceased from the time of a previous difficulty between other parties and the transaction now under investigation — the killing of Diamond Herd by the defendant; for the contention is that the killing in the instant case was but a continuance of the previous difficulty. In the first place, by reference to the brief of the evidence, it will be seen that the court stated, "I will be glad, of course, if you show it is material, to let you offer it again." While the ground of the motion does not set out the evidence except in a most general way, it is necessary for us to read the brief carefully *Page 276 
to understand the objection in this ground. We do not think that the defendant ever connected this testimony sufficiently to show its materiality and authorize its submission to the jury. InTrammell v. Shirley, 38 Ga. App. 710, this court held that "a ground of a motion for a new trial, though approved, is not valid if it is contradicted by the record." See also, in this connection, Harris Company v. Vallee Co., 29 Ga. App. 769
(9); James v. Cooledge, 129 Ga. 860. Also this court held in Watkins Co. v. Seawright, 40 Ga. App. 314, that, "where there is a conflict between a special ground of a motion for a new trial and the brief of the evidence, the latter will prevail." Therefore it follows that, if the question asked did not at that time appear material, it was not error to restrict the examination. It did not appear then, and so far as we are able to determine, it does not now appear material that the court should have gone into a trial as to why someone struck Paul Heard, a brother of the witness, in the head. Upon cross-examination the court may exercise its discretion in requiring counsel to make the relevancy of his question apparent. The record does not reveal that this was done, and the court then and there stated that, if it did become apparent, he would admit the testimony. See, in this connection, City Bank of Macon v.Kent, 57 Ga. 283; Sims v. State, 177 Ga. 266
(170 S.E. 58); Watson v. State, 192 Ga. 679 (16 S.E.2d 426);Stevens v. State, 49 Ga. App. 248 (174 S.E. 718). The scope of the examination of a witness rests largely within the discretion of the court. Fouraker v. State, 4 Ga. App. 692
(62 S.E. 116); Fields v. State, 141 Ga. 212 (5) (80 S. 337). The court may restrict the cross-examination to questions material to an issue. Hawkins v. State, 141 Ga. 212 (5) (80 S.E. 711). Smiley v. State, 156 Ga. 60 (118 S.E. 713);Clifton v. State, 187 Ga. 502, (2 S.E.2d 102). See alsoMcNabb v. State, 70 Ga. App. 798 (29 S.E.2d 643). Thus it will be observed that, if the evidence sought to be elicited on cross-examination was immaterial, as it appeared at the time of the ruling, no reversible error is shown. It does not appear that either the defendant or the deceased in the instant case was present at the time that Paul Heard was struck in the head, or that he knew anything about it. This ground has no merit.
3. Special ground 2 complains because the court, while Bud Heard was on cross-examination, ruled out the following questions *Page 277 
and answers: "Q. Now ain't it your custom to take your shotgun and go after negroes that bother you? A. No, sir. No, sir." At the instance of State's counsel the court ruled this question and answer out. Counsel cite no authority whatsoever to sustain his contention on this ground, and we know of none to sustain it, although counsel contends that the witness had his shotgun at the time of the killing, and the movant had witnesses present to testify that it was the custom of Bud Heard to take a shotgun and go after any negroes that bothered him. This ground is without merit.
4. Special ground 3 complains of the following charge of the court: "The charge against the defendant in this indictment being murder, it becomes necessary for the court to instruct you first as to the law of murder and then as to the law of voluntary manslaughter." Error is assigned on the ground that, simply because there was a charge of murder in the indictment, it does not necessarily follow that the court should have charged it when there was no evidence to sustain voluntary manslaughter. This abstract principle of law is correct, but in this case the evidence, as stated in the first division of this opinion, demanded a charge upon voluntary manslaughter. In Yarborough v.State, 86 Ga. 396 (12 S.E. 650), Judge Bleckley made this statement: "No proposition of law can be laid down without some implication of a state of facts as by possibility existing." This court held in Densley v. State, 24 Ga. App. 136 (2) (99 S.E. 895): "To declare the law applicable to a given state of facts is no expression or intimation of opinion as to whether any of the facts referred to do or do not exist in the case on trial." The statement of the court herein complained of was a mere preface to the charge as to the law applicable to the evidence and to the defendant's statement. This ground has no merit.
5. Special ground 4 complains of the refusal of the court to give a very lengthy request to charge upon reasonable fears and other phases of the case. We do not see that any benefit would be derived from setting out this written request. The court substantially charged the principle contained therein, not in the exact language of the request, but in a very elucidating manner as applied to the facts of this case. There is no merit to this contention.
6. Special ground 5 assigns error because the court failed to charge the jury concerning the defendant's alibi. The ground itself *Page 278 
shows that the question of alibi was not involved in this case, for it is alleged in this ground that "movant contends that he established by a preponderance of evidence that he was not at the scene of the killing before the actual killing, and was not present in the crowd of the sawmill boys at and just prior to the killing." As stated in the Code, § 38-122, "alibi as a defense involves the impossibility of the accused's presence at the scene of the offense at the time of its commission." The defendant in his statement admitted that he killed the deceased. The fact that he was somewhere else prior to that time has nothing to do with an alibi.
7. Special ground 6 complains because the charge of the court as a whole, in connection with the refusal to charge the request of the defendant, demands a reversal. With this we can not agree. Considered as a whole, the charge is without error, and substantially gave every principle of law requested by the movant that was warranted by the evidence. This ground is without merit.
The judge did not err in overruling the motion for a new trial for any of the reasons assigned.
Judgment affirmed. Broyles, C. J., and MacIntyre, J.,concur.